**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| CAROLE GIBBS and ARTHUR COLBY, individually and on behalf of all others similarly situated,<br><br>       *Plaintiffs*,<br><br>v.<br><br><br>SOLARCITY CORPORATION, a Delaware corporation,<br><br>       *Defendants*. | Civil Action No. |

## CLASS ACTION COMPLAINT
### (Jury Trial Demanded)

#### BRIEF SUMMARY

1.　　Plaintiffs Carole Gibbs ("Gibbs") and Arthur Colby ("Colby") (collectively "Plaintiffs") bring this Class Action Complaint and Demand for Jury Trial ("Complaint") against SolarCity Corporation ("Defendant" or "SolarCity") to stop its practice of making unsolicited telemarketing calls to the telephones of consumers nationwide and to obtain redress for all persons injured by its conduct. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

2.　　Defendant SolarCity is the largest solar energy system installer in the United States. SolarCity claims that since its founding in 2006, SolarCity has installed solar energy systems for over 230,000 customers.

3.      Unfortunately for consumers, Defendant SolarCity has cast its marketing net too wide in its effort to attract new business. That is, in an attempt to promote its business and to generate leads for its installation services, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features the repeated making of unsolicited calls to consumers' telephones, including cellular telephones and numbers that appear on the National Do Not Call Registry, without consent—all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

4.      By making the telephone calls at issue in this Complaint, Defendant caused Plaintiffs and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the placement and receipt of such unwanted calls, a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls, and a loss of the use and enjoyment of their cellphones, including the related data, software, and hardware components, and wear and tear on such components including the consumption of battery life, among other harms.

5.      The TCPA was enacted to protect consumers from unsolicited telephone calls like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiffs file the instant lawsuit and seeks injunctive and declaratory relief requiring Defendant to cease all unsolicited telephone calling activities to consumers as complained of herein and an award of statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

**PARTIES**

6.      Plaintiff Carole Gibbs is a natural person and citizen of the Commonwealth of

Massachusetts.

7.      Plaintiff Arthur Colby is a natural person and citizen of the State of Connecticut.

8.      Defendant SolarCity is a corporation incorporated and existing under the laws of the State of Delaware with its headquarters located at 3055 Clearview Way, San Mateo, California 94402. Defendant conducts business throughout this District, the Commonwealth of Massachusetts, and the United States.

## JURISDICTION AND VENUE

9.      This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., which is a federal statute. Furthermore, jurisdiction is proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq.* because the classes each consist of over 100 people, at least one member of each class is from a State other than California, and the amounts in controversy are over $5,000,000. Further, none of the exceptions to CAFA jurisdiction apply.

10.     The Court has personal jurisdiction over Defendant because it solicits significant consumer business in this District, has entered into contracts in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant solicits a significant amount of consumer business within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## COMMON ALLEGATIONS OF FACT

12.     Defendant SolarCity is the largest solar energy system installer in the United States. Since its founding in 2006, SolarCity has installed solar energy systems for over 230,000 customers.

13.     Unfortunately for consumers, Defendant utilized (and continued to utilize) a sophisticated telephone dialing system to call homeowners *en masse* promoting its services.

14.     That is, in Defendant's overzealous attempts to market its services, it placed (and continues to place) phone calls to consumers that never provided consent to call and to consumers with whom it had no prior relationship. Worse yet, Defendant placed (and continues to place) repeated and unwanted calls to consumers whose phone numbers are listed on the National Do Not Call Registry. Consumers place their phone numbers on the Do Not Call Registry for the express purpose of avoiding unwanted telemarketing calls like those alleged here.

15.     Not surprisingly, these practices have led to significant backlash and public complaints online from consumers:

    a.  "This could easily be the most annoying and predatory telemarketing business -- now working for Solar City -- on the scene. Hourly calls from Sacramento -- cutesy marketer posing as "a pal" who has to be treated rudely in order to make the point that you want to be removed from their calling list-- this is illegal and a constant waste of time. Who in the world does business with these people?? Anyone who signs up with Solar City or any other business using these telemarketers is making himself open to a lousy scam operation. I hate these people."[1]

    b.  "Solar City calls my fax line every single day. No one is ever going to answer

---

[1] http://800notes.com/Phone.aspx/1-916-873-1611

it you idiots.  If your phone etiquette is anything like your business savy you can go out of business today and no one would care.  Get a clue!"[2]

c.  "call me every early morning and never leave message."[3]

d.  "This caller calls repeatedly but never leaves a message. On consecutive days they called at the exact same minute of the day (11:21 AM)  - seems like an automated calling system. I've now had 5 or 6 calls in 3 days. Soon to be blocked!"[4]

e.  "Receive calls from this number daily but they never leave a message. Just put it on my blocked call list, hopefully it deters them."[5]

f.  "I answers the call the first time to see who call and I say I am not interested and I told theme please stop calling me.  please stop wasting my time every single day.[6]

g.  How many time[s] do we have to tell them "DO NOT CALL". Yet every week I still get 2 or more calls from them. To [sic] bad the national do not call list and its reporting system does not work[7]

h.  "call everyday ,annoying,stop"[8]

i.  "Recently as of today rep called I told them again stop calling. She continued to argue with me. I hung up she called back 4 times"[9]

j.  "They call me everyday of the week sometime 2 times a day and they call on weekends. They never leave a message, and when I do answer they hang up. I

---

[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] http://www.whytheycalled.com/877-373-7652/

want this to stop!!"[10]

    k.   "They keep calling and calling, I want them to stop calling me."[11]

16.    In making the calls to consumers cell phones without their prior written express consent, Defendant used an autodialer in violation of the Telephone Consumer Protection Act.

17.    Furthermore, Defendant calls these consumers who have no "established business relationship" with Defendant and who are registered on the Do Not Call list.

18.    Finally, even when consumers try to opt out of future calls by requesting to never be called again, Defendant continues to call them.

19.    In making the phone calls at issue in this Complaint, Defendant and/or its agent utilized an automatic telephone dialing system. Specifically, the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls simultaneously (all without human intervention).

20.    Defendant knowingly made (and continues to make) telemarketing calls without the prior express consent of the call recipients and knowingly continues to call them after it receives requests to stop. As such, Defendant not only invaded the personal privacy of Plaintiffs and members of the putative Class but also intentionally and repeatedly violated the TCPA.

## **FACTS SPECIFIC TO PLAINTIFF CAROLE GIBBS**

21.    On July 3, 2005, Plaintiff Gibbs registered her landline phone number on the National Do Not Call registry to avoid receiving unsolicited telemarketing calls on her phone. In

---

[10] *Id.*
[11] *Id.*

early 2016, Plaintiff Gibbs re-registered her landline phone number on the National Do Not Call registry.

22.     Approximately two years ago, a salesman visited Plaintiff Gibbs offering SolarCity's products and services. After some initial interest, Plaintiff Gibbs informed the salesman that she was not interested in doing business with SolarCity.

23.     Since that visit, Plaintiff Gibbs has been receiving calls from Defendant offering her their services though she already told them she was not interested.  On the initial calls two years ago, she informed Defendant that she was not interested and to stop calling her, yet they have been calling her regularly since then despite her stop call requests.

24.     As recently as April 10, 2016 Plaintiff Gibbs received two phone calls from Defendant SolarCity from the phone number 877-373-7652 on her landline telephone.

25.     On April 11, 2016, Plaintiff Gibbs received another call from Defendant SolarCity from the same phone number 877-373-7652. Plaintiff Gibbs informed the caller: (1) that she was not interested in Defendant's products or services, (2) that she had never given Defendant permission to call her, and (3) that Defendant was not to call her again.

26.     Plaintiff Gibbs does not have a current relationship with Defendant and had specifically requested that SolarCity not call her.

27.     Defendant is and was aware that the above-described telephone calls were and are being made to consumers like Plaintiff who had not consented to receive them and whose telephone numbers were registered with the National Do Not Call Registry.

## FACTS SPECIFIC TO PLAINTIFF ARTHUR COLBY

28.     On October 6, 2008, Plaintiff Colby registered his cellular phone number on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls on his phone.

29.     Approximately 6 months ago, Plaintiff Colby visited Defendant SolarCity's website and requested a quote for solar panels to be installed at his house.

30.     Thereafter, Defendant SolarCity performed a site visit to Plaintiff Colby's house to assess the positioning of his house and to provide a quote for the installation of solar panels. Defendant SolarCity informed Plaintiff Colby that his house was not positioned well for a solar installation and that Defendant SolarCity would not be able to perform an installation.

31.     Shortly after the in person visit, where Defendant SolarCity expressly told Plaintiff Colby that he would be unable to utilize their services, Defendant SolarCity began calling Plaintiff Colby's cellular and landline telephones repeatedly. These calls were made regularly and lasted for approximately six months.

32.     Plaintiff Colby repeatedly asked Defendant SolarCity to stop calling him, but after several months of fruitless requests, he simply stopped answering the calls from Defendant.

33.     Colby received at least one call more than thirty (30) days after he requested for the calls to stop.

34.     Defendant SolarCity's calls to Plaintiff Colby were placed with an ATDS. Whenever Plaintiff Colby would answer one of Defendant SolarCity's telephone calls there would be a pause before a live person would begin speaking—indicative of an ATDS or predictive dialer.

35.     Plaintiff Colby does not have a current relationship with Defendant. Even if Plaintiff Colby ever provided consent to Defendant to call him or requested that Defendant place calls to him or offer him its services, such consent was repeatedly and expressly revoked by Plaintiff.

36.     Defendant is and was aware that the above-described telephone calls were and are

being made to consumers like Plaintiff Colby who had not consented to receive them and whose cellphone numbers were registered with the National Do Not Call Registry.

## CLASS ALLEGATIONS

37.    Plaintiffs Gibbs and Colby bring this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of themselves and four Classes defined as follows:

**Autodialed No Consent Class**: All persons in the United States who from May 24, 2012 to the present (1) SolarCity caused to be called using an ATDS, (2) on the person's cellular telephone number, (3) for the purpose of selling SolarCity's products and services, and (4) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiff.

**Autodialed Do Not Call Class**: All persons in the United States who from May 24, 2012 to the present (1) SolarCity caused to be called using an ATDS, (2) on the person's cellular telephone, (3) for the purpose of selling SolarCity's products and services, (4) after the person informed SolarCity that s/he no longer wished to receive calls from SolarCity.

**Do Not Call Registry Class**: All persons in the United States who (1) SolarCity caused to be called more than one time on his/her telephone, (2) within any 12-month period, (3) where the telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for the purpose of selling SolarCity's products and services, and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.

**Telemarketing Revocation Class**: All persons in the United States who (1) SolarCity caused to be called, (2) on the person's telephone number, (3) for the purpose of selling SolarCity's products and services, (4) where the person requested that the calls stop yet s/he received at least one additional call more than thirty (30) days after the request, and at least two calls within a 12-month period, and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiff.

38.     The following people are excluded from the Class:

(1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiffs anticipate the need to potentially amend the class definitions following discovery into the scope of the classes, the manner by which the Plaintiffs supposedly consented to receipt of the calls, and the identity of any other persons who should be included as party defendants.

39.     **Numerosity**: The exact sizes of the Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and

belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be identified through reference to objective criteria, including Defendant's business records, consumer phone records, and other evidence to be gained in discovery.

40. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    a. Whether Defendant's conduct violated the TCPA;

    b. Whether Defendant systematically made telephone calls to individuals who did not previously provide Defendant and/or its agents with their prior express consent to receive such phone calls;

    c. Whether Defendant made the calls with the use of an ATDS;

    d. Whether Defendant systematically made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;

    e. Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct; and

    f. Whether Defendant systematically made telephone calls to consumers after they explicitly asked not to be called from Defendant.

41. **Typicality**: Plaintiffs' claims are typical of the claims of the other members of the Classes. Plaintiffs and the members of the Classes suffered essentially identical harm and sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Classes.

42. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs.

43. **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Classes as respective wholes. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Classes as respective wholes, not on facts or law applicable only to Plaintiffs.

44. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single court for each of the Classes. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION

### Violation of 47 U.S.C. § 227(b) *et seq.*

### (On behalf of Plaintiff Colby and the Autodialed No Consent Class)

Plaintiff incorporates the foregoing allegations as if fully set forth herein.

45.    Defendant made unsolicited and unwanted telemarketing calls to cellphone numbers belonging to Plaintiff and the other members of the Class—without their prior express written consent—in an effort to sell its products and services.

46.    Defendant failed to provide any of the language required to obtained prior express written consent under the TCPA, including a disclosure that the consumer was consenting to being called with an autodialer and/or that providing his or her cellphone number wasn't a requirement (direct or indirect) of any purchase.

47.    Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

48.    Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Class simultaneously and without human intervention.

49.    By making unsolicited telephone calls to Plaintiff and members of the Class's cellular telephones without prior express consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

50.    As a result of Defendant's unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone

calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

51.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff Colby and the other members of the Class.

## SECOND CAUSE OF ACTION

### Violation of 47 U.S.C. § 227(b) *et seq.*

### (On behalf of Plaintiff Colby and the Autodialed Do Not Call Class)

52.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

53.     Defendant made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiff Colby and the other members of the Class on their cellular telephone in an effort to sell its products and services *after* the person had informed SolarCity that s/he no longer wished to receive such calls from SolarCity.

54.     Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

55.     Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Class simultaneously and without human intervention.

56.     By making unsolicited telephone calls to Plaintiff and members of the Class's cellular telephones after they requested to no longer receive calls, SolarCity violated 47 U.S.C. § 227(b)(1)(A)(iii) by continuing to call them without prior express consent. Any consent was revoked when the cellphone owner informed Defendant to stop calling.

57.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the

Class suffered actual damages in the form of monies paid to receive the unsolicited telephone

calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a

minimum of $500 in damages for each such violation of the TCPA.

58.     Should the Court determine that Defendant's conduct was willful and knowing,

the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages

recoverable by Plaintiff and the other members of the Class.

### THIRD CAUSE OF ACTION

**Violation of 47 U.S.C. § 227(c) *et seq*.**

**(On behalf of Plaintiff Gibbs and the Do Not Call Registry Class)**

59.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

60.     The TCPA, specifically 47 U.S.C. § 227(c), provides that any "person who has

received more than one telephone call within any 12-month period by or on behalf of the same

entity in violation of the regulations prescribed under this subsection may" bring a private action

based on a violation of said regulations, which were promulgated to protect telephone

subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

61.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o

person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber

who has registered his or her telephone number on the national do-not-call registry of persons

who do not wish to receive telephone solicitations that is maintained by the federal government."

62.     47 C.F.R. § 64.1200(e), in turn, provides that § 64.1200(c) and (d) "are applicable

to any person or entity making telephone solicitations or telemarketing calls to wireless

telephone numbers to the extent described in the Commission's Report and Order, CG Docket

No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991'" (the "Report and Order").

63.     The Report and Order, in turn, states as follows:

The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

64.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive

calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5

years from the time the request is made.

65.     Defendant violated § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers such as Plaintiff and the Do Not Call Registry class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in § 64.1200(d)(3).

66.     Defendant made more than one unsolicited telephone call to Plaintiff Gibbs and members of the Do Not Call Registry class within a 12-month period without their prior express consent to receive such calls. Plaintiff and members of the Do Not Call Registry class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them.

67.     Defendant also violated § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff Gibbs and the Do Not Call Registry class, without instituting procedures that comply with the regulatory minimum standards for having a written policy, available on demand, for maintaining a list of persons who request not to receive telemarketing calls from them, without training its employees or personnel in the use of its do not call list, and in not recording and honoring do not call requests.

68.     Defendant further violated 47 U.S.C. § 227(c)(5) because Plaintiff Gibbs and the Do Not Call Registry class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.

69.     As a result of Defendant's conduct as alleged herein, Plaintiff Gibbs and the Do Not Call Registry class suffered actual damages and, under section 47 U.S.C. § 227(c), are each

entitled, *inter alia*, to receive up to $500 in damages for such violations of § 64.1200.

70.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry class.

## FOURTH CAUSE OF ACTION

### Violation of 47 U.S.C. § 227 *et seq.*

### (On behalf of Plaintiffs Gibbs and Colby and Telemarketing Revocation Class)

71.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

72.    Plaintiffs and members of the Telemarketing Revocation Class expressly requested that Defendant no longer place calls to them, after which Defendant failed to place Plaintiffs and members of the Do Not Call Revocation Class on Defendant's internal do-not-call list (or failed to do so within a reasonable time period).

73.    More than thirty (30) days following Plaintiffs' and the members of the Do Not Call Revocation Class's express requests to not receive calls from Defendant, Defendant placed additional calls to them without their consent and in contradiction of their requests not to be called.

74.    Defendant also violated § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiffs and the Telemarketing Revocation Class, without instituting procedures that comply with the regulatory minimum standards for having a written policy, available on demand, for maintaining a list of persons who request not to receive telemarketing calls from them, without training its employees or personnel in the use of its do not call list, and in not recording and timely honoring do not call requests

75.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiffs and the Telemarketing Call Revocation Class received more than one telephone call within a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiffs and the Telemarketing Revocation Class suffered actual damages, an invasion of their privacy, and, under section 47 U.S.C. § 227(c), are each entitled to, *inter alia*, up to $500 in damages for such violations of § 64.1200.

76.     As a result of Defendant's conduct as alleged herein, Plaintiffs and the Telemarketing Revocation class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of § 64.1200.

77.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Revocation Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Carole Gibbs and Arthur Colby, individually and on behalf of the Classes, prays for the following relief:

1.     An order certifying the Classes as defined above, appointing Plaintiffs Carol Gibbs and Arthur Colby as the representatives of the Classes and appointing their counsel as Class Counsel;

2.     An award of actual and statutory damages;

3.     A declaration that Defendant used an ATDS under the TCPA, that Defendant made autodialed calls without prior express consent, that Defendant called persons whose

numbers were registered on the Do Not Call list, that Defendant called persons with an ATDS

after they requested that the calls stop; that Defendant called persons without an ATDS more

than thirty (30) days after the person requested that the calls stop; that Defendant failed to

maintain a written policy for keeping a list of do not call requests and honoring such requests,

failed to train its telemarketing personnel in the existence and use of such a list, and failed to

honor stop requests;

     4.      An injunction requiring Defendant and its agents to cease all unsolicited

telephone calling activities and otherwise protecting the interests of the Classes;

     5.      An award of reasonable attorneys' fees and costs; and

     6.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**CAROLE GIBBS AND ARTHUR COLBY**, individually
and on behalf of all others similarly situated,

Dated: May 24, 2016        By: __/s/Julie Tolek, Esq._____
One of Plaintiff's Attorneys

Julie M. Tolek, Esq.
julie@thinkpinklaw.com
Think Pink Law
160 Speen Street, #202
Framingham, MA  01701
Tel: (617) 752-1739
Fax: (617) 752-1739

Stefan Coleman*
Law Offices of Stefan Coleman, LLC

201 S. Biscaynve Blvd, 28th Floor
Miami, FL 33131
law@stefancoleman.com
(877) 333-9427

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Tel: (720) 213-0675
Fax: (303) 927-0809

*Motion for admission *pro hac vice* to be filed