**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CAROLE GIBBS and ARTHUR COLBY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>GEORGE MORRIS, JOSE ALBINO LUCERO JR. and DAVID HALL on behalf of themselves and all others similarly situated,<br><br>Plaintiff-Intervenors,<br><br>v.<br><br>SOLARCITY CORPORATION, a Delaware corporation,<br><br>Defendant. | No.: 4:16-cv-11010-TSH |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF-INTERVENORS' MOTION TO INTERVENE AND TRANSFER**

**TABLE OF CONTENTS**

**PAGE(S)**

INTORDUCTION ..... 1

PROCEDURAL HISTORY ..... 1

ARGUMENT ..... 3

I. PLAINTIFF-INTERVENORS ARE ENTITLED TO INTERVENE ..... 3

A. Intervention Should Be Granted As A Matter of Right ..... 4

B. Permissive Intervention Is Also Appropriate ..... 6

II. THE *GIBBS* CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA ..... 7

A. Transfer Is Appropriate Under 28 U.S.C. § 1404(a) And The First-Filed Rule ..... 7

B. A Transfer Is Necessary To Avoid A Reverse Auction ..... 9

CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(2) ..... 11

CONCLUSION ..... 11

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Banco Popular de Puerto Rico v. Greenblatt*,
964 F.2d 1227 (1st Cir. 1992) ........ 5

*Blyden v. Mancusi*,
186 F.3d 252 (2d Cir. 1999) ........ 11

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
250 F.3d 171 (2d Cir. 2001) ........ 6

*Carnegie v. Household Int'l, Inc.*,
371 F. Supp. 2d 954 (N.D. Ill. 2005) ........ 11

*Cianbro Corp. v. Curran–Lavoie, Inc.*,
814 F.2d 7 (1st Cir. 1987) ........ 8

*Coady v. Ashcraft & Gerel*,
223 F.3d 1 (1st Cir. 2000) ........ 7

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) ........ 7

*Donnelly v. Glickman*,
159 F.2d 405 (9th Cir. 1998) ........ 3

*Dunkin' Donuts Franchised Restaurants LLC v. Wometco Donas Inc.*,
53 F. Supp. 3d 221 (D. Mass. 2014) ........ 8

*Feller v. Brock*,
802 F.2d 722 (4th Cir. 1986) ........ 4

*In re Cmty. Bank of N. Virginia*,
418 F.3d 277 (3d Cir. 2005) ........ 5

*In re Thompson*,
965 F.2d 1136 (1st Cir. 1992) ........ 3

*In re Gerber Probiotic Products Mktg. & Sales Practices Litig.*,
899 F. Supp. 2d 1378 (J.P.M.L. 2012) ........ 9

*In re Michaels Stores, Inc., Pin Pad Litig.*,
844 F. Supp. 2d 1368 (J.P.M.L. 2012) ........ 9

*In re Waggin' Train Chicken Jerky Pet Treat Prods. Liab. Litig.*,
893 F. Supp. 2d 1357 (J.P.M.L. 2012) ........ 9

*Pub. Serv. Co. of N.H. v. Patch*,
136 F.3d 197 (1st Cir. 1998) ........ 4

*R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*,
584 F.3d 1 (1st Cir. 2009) ........ 4, 5

*Reich v. Webb*,
336 F.2d 153 (9th Cir. 1964) ........ 3

*Reynolds v. Beneficial Nat. Bank*,
288 F.3d 277 (7th Cir. 2002) ........ 9

*Sierra Club v. Robertson*,
960 F.2d 83 (8th Cir. 1992) ........ 4

*Sindi v. El–Moslimany*,
2014 WL 6893537 (D. Mass. Dec.5, 2014) ........ 7, 8

*TPM Holdings, Inc. v. Intra–Gold Indus., Inc.*,
91 F.3d 1 (1st Cir. 1996) ........ 7

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) ........ 6

*Ungar v. Arafat*,
634 F.3d 46 (1st Cir. 2011) ........ 4, 5

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) ........ 8

*Venegas v. Skaggs*,
867 F.2d 527 (9th Cir. 1989) ........ 7

*Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
922 F.2d 92 (2d Cir. 1990) ........ 3

*World Energy Alternatives, LLC v. Settlemyre Industries, Inc.*,
671 F.Supp.2d 215 (D. Mass. 2009) ........ 8

**STATUTES**

28 U.S.C. § 1331 ........ 8

28 U.S.C. § 1404 ........ 8, 9

28 U.S.C. § 1404(a) ........ 1, 7, 8, 9

47 U.S.C. § 227 ........ 1

**RULES**

Fed. R. Civ. P. 24 .......... 1, 3, 4

Fed. R. Civ. P. 24(a)(2) .......... 4, 5

Fed. R. Civ. P. 24(b)(3) .......... 6

Fed. R. Civ. P. 24(b)(1)(B) .......... 6

**OTHER AUTHORITIES**

*Class Action Accountability: Reconciling Exit, Voice, and Loyalty in Representative Litigation*, 100 Colum. L. Rev. 370 (2000) .......... 14

*Class Wars: The Dilemma of the Mass Tort Class Action*, 95 Colum. L. Rev. 1343 (1995) .......... 13

*Governance and Legitimacy in the Law of Class Actions*, 1999 Sup. Ct. Rev. 337 (1999) .......... 14

*The Inadequate Search for 'Adequacy' in Class Actions: A Critique of Epstein v. MCA, Inc.*, 73 N.Y.U. L. Rev. 765 (1998) .......... 15

Plaintiff-Intervenors George Morris, Jose Albino Lucero Jr. and David Hall ("Plaintiff-Intervenors") hereby respectfully submit this motion to intervene and to transfer.

## INTRODUCTION

Since last year, Plaintiff-Intervenors have been actively litigating a class action against Defendant SolarCity Corp. ("Defendant" or "SolarCity") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") in a case captioned *Morris v. SolarCity Corp.*, 3:15-cv-05107-RS (N.D. Cal.) (the "*Morris* Action" or "*Morris*"). Then, just last month, Plaintiffs in this action (the "*Gibbs* Action" or "*Gibbs*") filed this copycat lawsuit against SolarCity making nearly identical claims. Accordingly, Plaintiff-Intervenors now seek to intervene pursuant to Fed. R. Civ. P. 24 and to transfer this case in accordance with 28 U.S.C. § 1404(a) and the first-filed rule.

## PROCEDURAL HISTORY

Plaintiff-Intervenor George Morris filed the *Morris* class action against SolarCity on November 6, 2015 in the United States District Court for the Northern District of California. Arisohn Decl. Ex. A ("*Morris* Compl."). Morris alleged that he received numerous calls from SolarCity, or entities acting on its behalf, and that these calls were made using an Automatic Telephone Dialing System and/or an artificial or prerecorded voice without prior express written consent in violation of the TCPA. *Id.* ¶ 1-2, 13-17. Since that time, Plaintiff has defeated a motion to stay, a motion to dismiss and has received discovery responses from Defendant, including substantial document production. Arisohn Decl. ¶¶ 3, 5, 7. On February 2, 2016, Morris filed an Amended Complaint, adding additional details about the calls that he received. *Id.* ¶ 4. Then, on May 25, 2016, Plaintiff-Intervenors filed a Second Amended Complaint adding Lucero and Hall as plaintiffs and Lead Genesis as an additional defendant. Arisohn Decl. Ex. B.

On July 12, 2016, Plaintiff-Intervenors moved to have their counsel appointed as interim class counsel in the *Morris* action. Arisohn Decl. ¶ 9.

The *Morris* action was brought by the Plaintiff-Intervenors on behalf of themselves as well as three proposed classes. Plaintiff-Intervenors define their Robocall Class as:

> All persons within the United States who (a) received a non-emergency telephone call; (b) on his or her cellular telephone or residential telephone line; (c) made by or on behalf of any Defendant in order to promote its products or services; (d) for whom that Defendant had no record of prior express written consent; (e) and such phone call was made with the use of an artificial or prerecorded voice; (f) at any time in the period that begins four years before the filing of the complaint in this action to the date that class notice is disseminated.

Arisohn Decl. Ex. B ¶ 39. Plaintiff-Intervenors define their Autodialer Class as:

> All persons within the United States who (a) received a non-emergency telephone call; (b) on his or her cellular telephone or residential telephone line; (c) made by or on behalf of any Defendant in order to promote its products or services; (d) for whom that Defendant had no record of prior express written consent; (e) and such phone call was made with the use of an automatic telephone dialing system as defined under the TCPA; (f) at any time in the period that begins four years before the filing of the complaint in this action to the date that class notice is disseminated.

*Id.* ¶ 40. Plaintiff-Intervenors define their National Do Not Call Class as:

> All persons in the United States who: (a) received more than one telephone solicitation call, initiated by any Defendant to promote its products or services; (b) in a 12–month period; (c) on their cellular telephone line or residential telephone line; (d) more than 30 days after registering their telephone number(s) on the National Do Not Call Registry; and (e) at any time in the period that begins four years before the filing of the complaint in this action to the date that class notice is disseminated.

*Id.* ¶ 42.

On June 1, 2016, the *Gibbs* class action complaint was filed, making substantially the

same claims as those previously made in the *Morris* complaint. ECF No. 1. The *Gibbs* complaint is brought on behalf of four proposed classes that are each subsumed by the *Morris* classes: (1) Autodialed No Consent Class; (2) Autodialed Do Not Call Class; (3) Do Not Call Registry Class; and (4) Telemarketing Revocation Class. *Id.* ¶ 37. Counsel for Defendant has acknowledged that there is substantial if not complete overlap between these two cases, but has declined to consent to a transfer of the *Gibbs* action. *Id.* ¶ 8. Defendant's deadline for responding to the *Gibbs* Complaint is August 12, 2016. A Rule 16 conference has not yet been scheduled in the *Gibbs* action.

## ARGUMENT

### I. PLAINTIFF-INTERVENORS ARE ENTITLED TO INTERVENE

Intervention pursuant to Federal Rule of Civil Procedure 24 is designed to help courts efficiently administer legal disputes by resolving all related issues in one lawsuit. *See Reich v. Webb*, 336 F.2d 153, 160 (9th Cir. 1964) (noting that the purpose of Rule 24 is "to prevent the multiplicity of suits where common questions of law or fact are involved"); W*ash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) (same). Rule 24 traditionally has received a liberal construction in favor of applicants for intervention. *In re Thompson*, 965 F.2d 1136, 1144 (1st Cir. 1992) (noting "the policy favoring liberal intervention under Rule 24"); *Donnelly v. Glickman*, 159 F.2d 405, 409 (9th Cir. 1998) ("In determining whether intervention is appropriate, we are guided primarily by practical and equitable considerations. We generally interpret the requirements broadly in favor of intervention."); *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) ("[L]iberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process."). "Doubts regarding the propriety of permitting intervention should be resolved in favor of allowing it, because this serves the judicial system's interest in

resolving all related controversies in a single action." *Sierra Club v. Robertson,* 960 F.2d 83, 85–86 (8th Cir. 1992).

Rule 24 provides for two types of intervention: (1) intervention as a right and (2) permissive intervention. Both types of intervention are appropriate in this matter.

**A. Intervention Should Be Granted As A Matter of Right**

To succeed on a motion to intervene as of right under Rule 24(a)(2), a putative intervenor must demonstrate:

> (i) the timeliness of its motion to intervene; (ii) the existence of an interest relating to the property or transaction that forms the basis of the pending action; (iii) a realistic threat that the disposition of the action will impede its ability to protect that interest; and (iv) the lack of adequate representation of its position by any existing party.

*R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009). Although "[e]ach of these requirements must be fulfilled, [and] failure to satisfy any one of them defeats intervention as of right," *Ungar v. Arafat*, 634 F.3d 46, 51 (1st Cir. 2011), the "inherent imprecision of Rule 24(a)(2)'s individual elements dictates that they 'be read not discretely, but together,' and always in keeping with a commonsense view of the overall litigation." *Pub. Serv. Co. of N.H. v. Patch,* 136 F.3d 197, 204 (1st Cir. 1998). Further, the First Circuit has noted that deciding whether each of these requirements has been met "requires a series of judgment calls—a balancing of factors that arise in highly idiosyncratic factual settings." *Ungar*, 634 F.3d at 51.

"A motion to intervene is timely if it is filed promptly after a person obtains actual or constructive notice that a pending case threatens to jeopardize his rights." *Id.* at 8. Here, given that the *Gibbs* action was only initiated last month, Plaintiff-Intervenors' motion to intervene is timely. Plaintiff-Intervenors' only learned of the *Gibbs* action a few weeks ago and promptly raised the matter with defense counsel. Arisohn Decl. ¶ 8. Once defense counsel declined to

seek a transfer of *Gibbs* matter, Plaintiff-Intervenors promptly drafted and filed this motion. *Id.* In addition, given the early status of the *Gibbs* action, the *Gibbs* parties will not be prejudiced by an intervention at this early stage. *R & G Mortgage Corp.*, 584 F.3d at 7 ("the status of the litigation at the time of the request for intervention is 'highly relevant.'") (quoting *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1231 (1st Cir. 1992)). If intervention is denied, however, Plaintiff-Intervenors will be severely prejudiced because, as discussed below, permitting two parallel class actions to proceed against a single defendant will create an opportunity for a reverse auction that will likely jeopardize the interest of the class.

Plaintiff-Intervenors have a direct interest in the *Gibbs* matter that they will not be able to protect absent an intervention. Both the *Morris* and *Gibbs* cases are brought on behalf of nearly identical classes seeking the same relief from the same defendant. As such, a resolution of the *Gibbs* matter would also resolve much of Plaintiff-Intervenors' claims against Defendant. Plaintiff-Intervenors thus have a stake in protecting the interests of the class from inconsistent rulings and the duplication of efforts by two sets of class counsel. In addition, permitting two identical class actions to go forward will leave the class vulnerable to the dangers a reverse auction and an inadequate settlement. *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 314 (3d Cir. 2005) ("In the class action context, the second and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation.").

Likewise, Plaintiff's counsel cannot adequately represent the class because, as a copycat action, they will only serve to undercut the first-filed *Morris* action and the significant progress that has been made to date in that case. Plaintiffs' decision to file the *Gibbs* action, moreover, is highly suspicious given the previously filed case in *Morris* and raises serious concerns about a collusive settlement or reverse auction. *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d

171, 179 (2d Cir. 2001) ("The intervenor's burden of demonstrating inadequacy of 'representation is generally speaking minimal.'") (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). In addition, while the proposed classes in *Gibbs* are all subsumed by the *Morris* classes, the *Morris* Second Amended Complaint is additionally brought on behalf of a class of consumers contacted using an artificial or prerecorded voice. Because the *Gibbs* plaintiffs do not allege this kind of TCPA violation, then cannot adequately represent the *Morris* plaintiffs.

**B. Permissive Intervention Is Also Appropriate**

Under Federal Rule of Civil Procedure 24(b)(1)(B), the Court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Here, there is no question that Plaintiff-Intervenors have claims that share common questions of law or fact with the *Gibbs* action. The claims in *Gibbs* are virtually identical to Plaintiff-Intervenors' and arise from the same events, namely telemarketing calls made with an ATDS absent prior express written consent and calls to consumers who had registered their phone numbers on the National Do-Not-Call List. In addition, given the early stage of the *Gibbs* matter, intervention will not create any undue delay or prejudice to the original parties.

"Judicial economy is a relevant consideration in deciding a motion for permissive intervention." *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989). Permitting intervention in this case so that Plaintiff-Intervenors can request a transfer will create numerous efficiencies, conserve the resources of the parties their counsel, and the judiciary, thus avoiding duplication of discovery and preventing inconsistent rulings. The appropriateness of a transfer pursuant to 28

U.S.C. § 1404(a) and the first-filed rule, as well as concerns about a reverse auction—all described below—likewise counsel in favor of the Court exercising its discretion to permit intervention.

## II. THE *GIBBS* CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

### A. Transfer Is Appropriate Under 28 U.S.C. § 1404(a) And The First-Filed Rule

"As between federal district courts . . . the general principle is to avoid duplicative litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Accordingly, pursuant to 18 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *See TPM Holdings, Inc. v. Intra–Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996). Actions involving "the same parties and similar subject matter" simultaneously pending in different district courts lead to "wasted resources because of piecemeal litigation, the possibility of conflicting judgments, and a general concern that the courts may unduly interfere with each other's affairs." *Id.*

Courts consider various factors in deciding whether a transfer pursuant to Section 1404(a) is appropriate. "In addition to the convenience of parties and witnesses, the factors to be considered by the court include the availability of documents; the possibility of consolidation; and the order in which the district court obtained jurisdiction." *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000); *Sindi v. El–Moslimany*, 2014 WL 6893537, at *12 (D. Mass. Dec.5, 2014). The Court also considers the interests of justice. *See id.* Throughout its analysis, "the Court is mindful that the statute's purpose is 'to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *World Energy Alternatives, LLC v. Settlemyre Industries, Inc.*, 671 F.Supp.2d 215,

217 (D. Mass. 2009) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)); *Sindi*, 2014 WL 6893537, at *12.

In addition, a transfer under Section 1404 is particularly appropriate when the first-filed rule applies. "Where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision." *Cianbro Corp. v. Curran–Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987). "Such cases need not be literally identical; it suffices if they are substantially similar." *Dunkin' Donuts Franchised Restaurants LLC v. Wometco Donas Inc.*, 53 F. Supp. 3d 221, 233 (D. Mass. 2014).

Here, applying all of these considerations, a transfer of this case to the Northern District of California is warranted. As an initial matter, the Northern District of California is a venue in which this case could have been initially brought. *See* 28 U.S.C. § 1404(a). Indeed, that is the venue where the first-filed *Morris* action was brought. In addition, the Northern District of California, like this Court, has federal question jurisdiction pursuant to 28 U.S.C. § 1331, because this action involves a claim arising under a federal statute. The Northern District of California also has personal jurisdiction over Defendant because that is where Defendant maintains its principal place of business. Moreover, given the overlap between the two actions at issue here, the second-filed *Gibbs* action should be transferred to the Northern District of California where the first-filed *Morris* action has been pending since last year.

Notably, Judicial Panel on Multidistrict Litigation ("JPML") has consistently promoted the transfer of copycat class actions under Section 1404(a). *See, e.g., In re: Michaels Stores, Inc., Pin Pad Litig.*, 844 F. Supp. 2d 1368 (J.P.M.L. 2012) ("transfer pursuant to Section 1404 is available to minimize any possibility of duplicative discovery among these actions"); *In re:*

*Waggin' Train Chicken Jerky Pet Treat Prods. Liab. Litig.*, 893 F. Supp. 2d 1357, 1358 (J.P.M.L. 2012) (noting that Section 1404 motions "will further simplify coordination of all related actions"); *In re: Gerber Probiotic Products Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012) ("transfer under Section 1404(a)—where appropriate—can result in a more streamlined action").

**B. A Transfer Is Necessary To Avoid A Reverse Auction**

Failing to transfer the *Gibbs* action to the Northern District of California creates a substantial risk that the interests of the class will be harmed through a reverse auction. As Judge Posner has described it, a "reverse auction" is a "practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 282 (7th Cir. 2002).

> The ineffectual lawyers are happy to sell out a class they anyway can't do much for in exchange for generous attorneys' fees, and the defendants are happy to pay generous attorneys' fees since all they care about is the bottom line—the sum of the settlement and the attorneys' fees—and not the allocation of money between the two categories of expense.

*Id.* Professor John C. Coffee, Jr. of Columbia Law School has similarly observed:

> It involves what this Article will call a "reverse auction," namely, a jurisdictional competition among different teams of plaintiffs' attorneys in different actions that involve the same underlying allegations. The first team to settle with the defendants in effect precludes the others (who may have originated the action and litigated it with sufficient skill and zeal that the defendants were eager to settle with someone else).

John C. Coffee, Jr., *Class Wars: The Dilemma of the Mass Tort Class Action*, 95 Colum. L. Rev. 1343, 1370-73 (1995). In a later article, Professor Coffee elaborated:

> Such competitions between rival proposed nationwide class actions have become increasingly common. If we assume that both rival

> teams of plaintiffs' attorneys are roughly equally competent, class members might be rationally indifferent to which team won. But the rival legal teams cannot be indifferent, because only the winning team will be entitled to a court-awarded attorney's fee. Hence, both teams have an incentive to strike an early deal with the defendants, and the defendants can in turn exploit this leverage and force an auction between these rival teams to see which will make (or accept) the lowest settlement offer. Even when no rival class action is filed, plaintiffs' attorneys understand that one might be filed, and hence they may be anxious to negotiate an early settlement before a rival bidder appears. Finally, class counsel is aware that if they press defendants 'too hard,' defendants may actually solicit a rival team of plaintiffs' attorneys to file an action elsewhere and then may enter an immediate settlement with these new entrants.

John C. Coffee, Jr., *Class Action Accountability: Reconciling Exit, Voice, and Loyalty in Representative Litigation*, 100 Colum. L. Rev. 370, 392 (2000). Other commenters have made similar observations:

> There is a strong pressure toward a race to the bottom when lawyers are negotiating to close out claims that they did not have any control over in the first place. Any fee generated from a low-value settlement is better than the prospect of no fee in the event that there is no settlement. Since multiple actions may be – and often are – brought over the same general course of conduct, a defendant may play the rival class counsel off against each other seeking to extract the broadest release at the lowest price.

Samuel Issacharoff, *Governance and Legitimacy in the Law of Class Actions*, 1999 Sup. Ct. Rev. 337, 388 (1999).

> The plaintiff/lawyer shopping problem arises when a second competing class action covering the same or a related set of claims is filed (or, for that matter, when a class attorney is worried that a competing action may be filed). When there are competing class actions, the outcome of the action that is concluded first is binding on the whole class. Because judges typically award attorneys' fees predominantly to the lawyers who act as class counsel in their courts, each set of competing lawyers has a strong financial incentive to bring its action to a speedy conclusion. Defendants, well aware of these incentives, can thus go plaintiff and lawyer shopping; By indicating that they will deal with class counsel who is willing to settle for the least, they implicitly create a "reverse

> auction" in which competing lawyers "underbid" each other in order to have their own action settled first and earn attorneys' fees.

Marcel Kahan & Linda Silberman, *The Inadequate Search for 'Adequacy' in Class Actions: A Critique of Epstein v. MCA, Inc.*, 73 N.Y.U. L. Rev. 765, 775 (1998). This Court, as a fiduciary for the class, has an obligation to protect the class from such malfeasance. *Carnegie v. Household Int'l, Inc.*, 371 F. Supp. 2d 954, 957-58 (N.D. Ill. 2005) (recognizing that "counsel and the court owe a fiduciary duty" to a certified class); *Blyden v. Mancusi,* 186 F.3d 252, 270 n.9 (2d Cir. 1999) (discussing the related problem of "'migratory settlers' who have come from or fled to another jurisdiction" to settle a case).

Here, absent a transfer of the *Gibbs* matter, the class will be represented by two competing teams of class counsel. Because significant progress has been made in the *Morris* action, counsel in *Gibbs* will have a perverse incentive to settle this case as quickly and as cheaply as possible so that they are not denied fees. If this case is transferred, however, Judge Seeborg can appoint class counsel who can speak for the class with a single voice and who can litigate this case or negotiate a resolution unencumbered and with incentives that are aligned with the class.

## LOCAL RULE 7.1(a)(2) CERTIFICATION

Undersigned counsel certify that they have conferred with counsel for Plaintiffs and Defendant pursuant to Local Rule 7.1(a)(2) in a good faith effort to resolve or narrow the issues presented by this motion, with the following result: Plaintiffs and Defendant have declined to assent to the relief sought by this motion.

## CONCLUSION

For the reasons set forth above, Plaintiff-Intervenors' motion to intervene and to transfer should be granted in all respects.

Dated: July 27, 2016

**PASTOR LAW OFFICE**

By: */s/ David Pastor*
David Pastor

David Pastor (BBO # 391000)
Pastor Law Office
63 Atlantic Avenue, 3d Floor
Boston, MA 02110
Telephone: (617) 742-9700
E-Mail: dpastor@pastorlawoffice.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*To Be Admitted Pro Hac Vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
E-Mail: jarisohn@bursor.com

*Attorneys for Plaintiff-Intervenors*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

/s/ David Pastor
David Pastor