**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CAROLE GIBBS, et al., | Civil Action 4:16-CV-11010-TSH |
| Plaintiffs, | **DEFENDANT SOLARCITY CORPORATION'S OPPOSITION TO PLAINTIFF-INTERVENORS' MOTION TO INTERVENE AND TRANSFER** |
| v. | |
| SOLARCITY CORPORATION, | |
| Defendant. | |

**DEFENDANT SOLARCITY'S OPPOSITION TO PLAINTIFF-INTERVENORS'**

**MOTION TO INTERVENE AND TRANSFER**

Defendant SolarCity Corporation ("SolarCity") respectfully submits this Opposition to Plaintiff-Intervenors George Morris, Jose Albino Lucero Jr., and David Hall's ("Intervenors") Motion to Intervene and Transfer (Dkt. 15) ("Motion").

## I.   INTRODUCTION

Intervenors seek to strip this Court of jurisdiction over this class action based on thin argument and manufactured concerns.  Intervenors' premise: that they, too, have filed a case with similar, although not identical, allegations in the Northern District of California, *Morris v. SolarCity Corp.* ("*Morris*"), Case No. 3:15-cv-05107.  From this premise, they conclude that intervention—and conveniently, a subsequent transfer—is the only means of streamlining overlapping cases and avoiding the threat of a potential "reverse auction."  Nonsense.  It is true that both *Gibbs* and *Morris* allege SolarCity violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  But that is where the similarities begin and end; each case presents unique plaintiffs with distinct facts and circumstances.  Dkt. No. 1 (Complaint, hereinafter "Compl."), ¶ 3; Request for Judicial Notice in Support of SolarCity's Opposition to Motion to Intervene and Transfer, filed herewith ("RJN"), Ex. L (Second Amended Class Action Complaint,

1   hereinafter "*Morris* SAC"), ¶ 2.  As set forth herein, the two complaints are based on different

2   allegations by different plaintiffs involving different circumstances.  There is no reason to

3   combine the claims into a single case.  The efficient approach to resolution is to deal with each

4   complaint separately.  As for the threat of a "reverse auction," it is a specious suggestion devoid

5   of facts or support.

6        More to the point, Intervenors cannot show they are entitled to intervention, either as a

7   matter of right, or permissive.  This motion is premature in the first instance.  At this early stage,

8   Intervenors have no direct interest in this case that would justify their intrusion.  Indeed, courts

9   typically entertain such motions during class certification, when a party can demonstrate more

10  than the generalized and speculative interest that Intervenors articulate here.

11       For similar reasons, Intervenors also cannot show that the *Gibbs* case somehow impairs or

12  impedes their interests, or that present counsel is inadequate to protect those interests.  Other than

13  perhaps the risk of losing attorneys' fees,[1] in a class actions setting, would-be putative plaintiffs

14  like Intervenors already possess multiple opportunities to challenge this case as it progresses.

15  There is no need for intervention or to have the case transferred to a different forum.  For

16  instance, if a class is certified here—which SolarCity contends it will not—and assuming the

17  class definition includes Intervenors, they may opt out and pursue their own independent actions

18  at that time.  The same is true if and should any settlement be reached; Intervenors again can

19  either opt out or object to any such settlement.  All of which precludes Intervenors from

20  establishing any risk to their legal interests absent intervention.  Indeed, Intervenors' request

21  presents a far greater threat of interfering with the proceedings in this case and creating delay,

22  than any threat of compromised interests.

23

24

25

26  [1] That the risk of losing fees may be Intervenors' motivating factor is apparent.  Intervenors have
    also moved for the court in the *Morris* case to appoint them as Interim Class Counsel, RJN, Ex.
27  M, seemingly under the assumption that if they are permitted to intervene and transfer the case to
    the Northern District of California, they will not have to compete for lead counsel, as is the case
28  when multiple lawyers have filed multiple class action cases.  RJN, Ex. N, at 1-3.

DEF.'S OPPO. TO MOT. TO INTERVENE
AND TRANSFER
4:16-CV-11010-TSH

Finally, the Intervenors' corresponding request for a transfer would merely cause inconvenience to the parties and witnesses in this case, and disregard the appropriate deference due to plaintiff's choice of forum.

Accordingly, SolarCity respectfully requests the Court deny the Motion.

## II.   STATEMENT OF FACTS

Defendant SolarCity, founded by brothers Peter and Lyndon Rive in 2006, makes clean solar energy available to homeowners, businesses, schools, nonprofits and government organizations at a lower cost than they pay for energy generated by burning fossil fuels.  RJN, Exs. A, B.  By finding ways to offer renewable energy at affordable prices, SolarCity has become the leading solar provider in the United States.  RJN, Ex. C.

The *Gibbs* case was filed on June 1, 2016.  *See* Dkt. No. 1 (Complaint, hereinafter "Compl.").  The case was filed on behalf of Plaintiffs Carole Gibbs and Arthur Colby and alleges that SolarCity violated the TCPA by making unsolicited calls to consumers' telephones without consent.  Compl. ¶¶ 1, 3.  Plaintiff Gibbs specifically alleges that SolarCity placed 3 calls to her landline telephone on April 10 and 11, 2016.  Compl. ¶ 24-25.  Plaintiff Colby alleges that approximately within the six months prior to filing the complaint, "Defendant SolarCity began calling Plaintiff Colby's cellular and landline telephones repeatedly."  Compl. ¶¶ 29-31.

The Complaint explains, however, that SolarCity representatives placed these calls on the heels of meetings with SolarCity representatives to discuss Defendant's solar products and service.  Compl. ¶¶ 21-36.  A SolarCity representative placed live calls specifically to follow-up on the in-person meetings with the *Gibbs* Plaintiffs.  *Id.*  Plaintiffs nevertheless contend that SolarCity violated the TCPA in placing these calls and bring claims as individuals and on behalf of four distinct classes.  *Id.* ¶ 37.  The four proposed classes include (1) recipients of Automatic Telephone Dialing System ("ATDS") calls who SolarCity claims it had obtained prior express consent to call ("Autodialed No Consent Class"); (2) recipients of ATDS calls after informing SolarCity that s/he no longer wished to receive calls ("Autodialed Do Not Call Class"); (3) recipients of calls whose telephone numbers are listed on the National Do Not Call Registry who SolarCity claims it had obtained prior express consent to call ("Do Not Call Registry Class"); and

DEF.'S OPPO. TO MOT. TO INTERVENE
AND TRANSFER
4:16-CV-11010-TSH

(4) recipients of calls who had requested not to receive calls from SolarCity but continued to receive calls ("Telemarketing Revocation Class"). *Id.* SolarCity has not yet filed a responsive pleading here, nor have Plaintiffs yet moved for class certification. *See* Dkt. No. 8 (Order granting extension of time for SolarCity's responsive pleading to August 12, 2016).

In contrast, Intervenors alleged different facts and circumstances to support the claims in the *Morris* action in the Northern District of California. Plaintiffs in the *Morris* case filed their Second Amended Complaint ("SAC") on May 25, 2016.[2] *Morris* SAC. The Morris case focuses on "[w]hether Defendants made telephone calls to class members using an artificial or prerecorded voice without their prior express written consent." *Morris* SAC ¶ 46(a); compare with Dkt. No. 16 (Memorandum of Law in Support of Plaintiff-Intervenors' Motion to Intervene and Transfer, hereinafter "Mot.") 6. The *Morris* SAC also names an additional defendant compared with *Gibbs*, as it includes not just SolarCity, but also a lead generator, Lead Genesis, Inc. ("Lead Genesis"), alleged to have actually placed the offending calls. *Morris* SAC ¶¶ 1, 26. The *Morris* plaintiffs seek to represent three nationwide classes: (1) recipients of calls made using an artificial or prerecorded voice ("Robocall Class"); (2) recipients of calls made with an ATDS ("Autodialer Class"); and (3) recipients of calls whose telephone numbers are on the National Do Not Call Registry ("National Do Not Call Class"). *Morris* SAC ¶¶ 39-42.

Neither party has moved for class certification, as, indeed, in the instant case, SolarCity has not yet even responded to the Complaint. *See* Dkt. No. 8; RJN, Ex. K (Case Management Scheduling Order setting class certification hearing for March 9, 2017).

### III.   THE COURT SHOULD DENY INTERVENORS' MOTION

To intervene, a person must either have "an interest relating to the . . . transaction that is the subject of the action" (in the case of intervention as of right) or "a claim or defense that shares with the main action a common question of law or fact" (in the case of permissive intervention).

---

[2] The first *Morris* complaint was brought by an individual with expertise in TCPA lawsuits. RJN, Exs. D-I, J (Motion to Dismiss First Amended Complaint), at 9. Morris appears to have filed more than 20 TCPA lawsuits, and even teaches a "Rec Center" class on "How to Sue Telemarketers using the TCPA law." *Id.* Since SolarCity filed its motion to dismiss, plaintiffs' counsel in *Morris* have found additional plaintiffs and amended the complaint. *Morris* SAC ¶¶ 4-5.

1   *See* Fed. R. Civ. P. 24(a)(2) and Fed. R. Civ. P. 24(b)(1)(B).

2          In order to meet their burden for intervention as of right, the moving party must

3   demonstrate: (1) the intervenor must file a timely application; (2) the intervenor must have a

4   "direct and substantial interest in the subject matter of the litigation;" (3) the disposition of the

5   case may "impair or impede" intervenor's ability to protect that interest; and (4) the interest "must

6   be inadequately represented by existing parties." *Caterino v. Barry*, 922 F.2d 37, 39-40 (1st Cir.

7   1990).  "An applicant's failure to meet any one of these requirements is a sufficient basis for

8   denying intervention as of right." *Id.* at 40.

9          In order to meet their burden for permissive intervention, Intervenors must have a "claim

10  or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P.

11  24(b)(1)(B).  Intervenors must establish a common question of law by demonstrating that they

12  share "legal issues" with Plaintiffs in this case.  *In re Trade Partners, Inc. Investor Litigation*, No.

13  1:07-md-1846, 2009 WL 1788608, at *1 (W.D. Mich. June 17, 2009) (denying motion to

14  intervene because intervenor failed to identify common question of law or fact).  "A common

15  question of fact exists if evidence on the same issue is relevant to both an intervenor's claim and

16  the claims in the underlying action."  6 Moore, Federal Practice, § 24.11 (2016).  Courts will not

17  grant intervention, however, if "the intervention will unduly delay or prejudice the adjudication of

18  the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

19         Intervenors here utterly fail to satisfy their burden for intervention under either standard.

20  Moreover, the intervention will result in delay and prejudice to the parties in the instant case,

21  while it will not prejudice the *Morris* plaintiffs.

22         **A.     Plaintiff-Intervenors Are Not Entitled To Intervention As Of Right**

23         Intervenors' Motion fails to establish any of the factors required for intervention as of

24  right.  Its prematurity dispels any notion that Intervenors have a direct interest in the *Gibbs*

25  matter; the *Gibbs* litigation does not impair any Intervenor interests that may exist; and, even

26  assuming the *Morris* plaintiffs have an interest in this litigation, Intervenors fail to show that

27  plaintiffs' counsel inadequately represent their interests in this case.

28         **1.     Intervenors' Request Is Premature, And Fails To Establish A Direct**

DEF.'S OPPO. TO MOT. TO INTERVENE
AND TRANSFER
4:16-CV-11010-TSH

<u>**Interest In This Case**</u>

Given the untimeliness of Intervenors request—brought at the very inception of this lawsuit and even before SolarCity has had an opportunity to respond to the Complaint—Intervenors cannot show a direct interest in this case, and therefore fail to satisfy two of the factors required for the Court to grant intervention.  The putative intervenor must have an interest in the proceedings that are direct, substantial, and legally protectable.  *Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971) (superseded by statute on other grounds) (affirming denial of motion to intervene); *H.L. Hayden Co. v. Siemens Medical Systs., Inc.*, 797 F.2d 85, 88 (2d Cir. 1986); *Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*, 725 F.2d 871, 874 (2d Cir. 1984).  "An interest that is too contingent or speculative—let alone an interest that is wholly nonexistent—cannot furnish a basis for intervention as of right."  *Ungar v. Arafat*, 634 F.3d 46, 51-52 (1st Cir. 2011).

In particular, courts have rejected attempts to intervene prior to class certification because class certification is not a foregone conclusion.  *George v. Uponor, Inc.*, 290 F.R.D. 574, 577–78 (D. Minn. 2013) ("The Court may ultimately certify a smaller-than-nationwide class in this action, or deny class certification altogether.  If the Smiths are allowed to intervene now and either scenario occurs, the Smiths will have intervened by right without any right to do so.").  Here, no party has moved for class certification in either *Gibbs* or *Morris*.

Accordingly, any claimed interest is purely speculative at this point.  *Id.*  In *Cole v. NIBCO, Inc.*, 2016 WL 1313106, at *6 (D.N.J. Apr. 4, 2016), the court held that putative class members have no interest in a case until a class is certified.  In that case, plaintiffs asserted a putative nationwide class of homeowners who sustained damages from defendant's product.  *Id.* at *1.  Intervenors similarly defined their putative class as Florida homeowners who had installed defendant's product.  *Id.* at *2.  In denying the motion to intervene, the court reasoned that although "*after* class certification, an absent class member-intervenor will necessarily have a significant interest in the litigation," intervenors "will necessarily not have an interest until a class

DEF.'S OPPO. TO MOT. TO INTERVENE
AND TRANSFER
4:16-CV-11010-TSH

1   is certified." *Id.* at *4, 6.  Until the court certified a class that included intervenors, intervenors

2   were free to litigate their claims in Florida unobstructed.  *Id.* at *6.[3]

3                    **2.**       **There is No Impairment or Impediment to Intervenors' Interests**

4          Intervenors utterly fail to show that the case would, in any way, "impair or impede" the

5   *Morris* plaintiffs' interests.  "The impair or impede requirement mandates a showing that the

6   interest holder be injured in a practical sense."  6 Moore, Federal Practice, § 24.03(3)(a) (2016).

7   Allegations of a risk of inconsistent rulings or duplication of efforts do not justify the

8   extraordinary relief they seek.  In fact, the risks of inconsistent rulings and duplication of efforts

9   do not exist prior to class certification.  *See Worthington v. Bayer Healthcare LLC*, No. CIV.A.

10  11-2793 ES, 2011 WL 6303999, at *8 (D.N.J. Dec. 15, 2011) (finding threat of inconsistent

11  rulings to be "too remote to warrant intervention as of right" prior to class certification).

12  Intervenors also fail to provide any legal authority supporting their argument that these risks are

13  valid grounds to intervene.

14         Most important, the *Gibbs* litigation does not impair potential intervenors' interests

15  because they have the right to object to any settlement during hearings on motions for preliminary

16  or final approval, or opt out of the class and pursue their claims separately.  *Zepeda v. PayPal,*

17  *Inc.*, No. 10CV02500SBAJCS, 2014 WL 1653246, at *5–6 (N.D. Cal. Apr. 23, 2014); *Izzio v.*

18  *Century Partners Gold Management, L.P.*, Nos. 3:14-CV-03194-P, 3:15-CV-0861-P, 2015 WL

19  5472845, at *5-6 (N.D. Tex. Sept. 15, 2015); *see generally, Shea v. Angulo*, 19 F.3d 343, 347 (7th

20  Cir. 1994) ("Impairment exists when the decision of a legal question ... would, as a practical

21  matter, foreclose the rights of the proposed intervenor in a subsequent proceeding") (citations

22  omitted).

23                    **3.**       **Intervenors Cannot Establish Any Viable Challenges to Adequacy of**
                                   **Representation**
24

25

26  _____

27  [3] Although Intervenors cite *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 314 (3d Cir. 2005), for
    the proposition that an absent class member is entitled to intervene by the very nature of class
    action litigation, that motion to intervene was made after members of the nationwide class
28  received a Notice of Class Action Settlement.  *See* Mot. at 5.

                                                      DEF.'S OPPO. TO MOT. TO INTERVENE
                                                      AND TRANSFER
                                                      4:16-CV-11010-TSH

Baseless and conclusory contentions that Plaintiffs' counsel here cannot adequately represent the class falls short of the burden to affirmatively show that intervention is necessary. *Massachusetts Food Ass'n v. Massachusetts Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 567 (1st Cir. 1999) (Intervenors bear the burden of showing inadequate representation). Courts have held that a "difference of opinion concerning litigation strategy or individual aspects of a remedy" does not satisfy that burden. *Jenkins by Jenkins v. State of Mo.*, 78 F.3d 1270, 1275 (8th Cir. 1996). Instead, "[a] party that seeks to intervene as of right must produce some tangible basis to support a claim of purported inadequacy." *Public Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 207 (1st Cir. 1998). A "tangible basis" to support such a claim requires "more than speculation." *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979). In fact, courts typically require a showing of "adversity of interest, collusion, or nonfeasance." *Id.* Indeed, adequacy is presumed when the cases have the same objectives. *See Wright v. Krispy Kreme Doughnuts, Inc.*, 231 F.R.D. 475, 478 (M.D.N.C. 2005) (" '[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the [applicant for intervention] must demonstrate adversity of interest, collusion, or nonfeasance.' ") (citation omitted).

Here, Intervenors allege that Plaintiffs in this case will undercut the progress of the *Morris* litigation without any basis for that belief except that it is a supposed "copycat" action with a risk of a reverse auction. Mot. at 5. Courts have found arguments that a lawsuit is a copycat action unavailing, however, to establish that counsel thereby inadequately represent their interests. As one court noted: "[Intervenor's] only assertion of 'underhanded activity' by class counsel stems from her claim that the original [complaint] was a 'copycat' from her Los Angeles lawsuit. This claim alone cannot support the indictment of a reverse auction." *Cohorst v. BRE Properties, Inc.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 3489781, at *8 (S.D. Cal. July 19, 2011), report and recommendation adopted, No. 10CV2666 JM BGS, 2011 WL 3475274 (S.D. Cal. Aug. 5, 2011).

Even where an intervenor has raised suspicions that a reverse auction settlement has already occurred, courts in this district have rejected such suspicions as insufficient to warrant intervention. *See, e.g.*, *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, No. MDL 09-

1   2067-NMG, 2014 WL 2547543, at *2–3 (D. Mass. June 3, 2014), appeal dismissed (Nov. 20,

2   2014).  If parties could intervene based solely on the suspicion of collusive action, no settlement

3   could ever occur where there are parallel or multiple class actions—"none of the competing cases

4   could settle without being accused by another of participating in a collusive reverse auction."

5   *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116- IEG WMC, 2012 WL 5873701, at *4 (S.D.

6   Cal. Nov. 20, 2012).  Here Intervenors even go a step further, alleging a threat of *future* collusive

7   action.  Mot. at 5.  Intervenors fail to show that such suspicions support their request for

8   intervention.

9           Moreover, the argument that Plaintiffs' counsel in this action have an incentive to settle

10   quickly and cheaply disregards counsel's sworn ethical duties to their clients.  Intervenors

11   themselves recognize that counsel owe a fiduciary duty to a certified class.  Mot. at 11 (citing

12   *Carnegie v. Household Int'l, Inc.*, 371 F. Supp. 2d 954, 957-58 (N.D. Ill. 2005) for the

13   proposition that "counsel and the court owe a fiduciary duty" to a certified class).[4]

14           Intervenors fail to establish any of the requirements for intervention as of right.  Failure to

15   meet even one of the requirements is fatal to a motion to intervene as of right.  *Caterino v. Barry*,

16   922 F.2d 37, 40 (1st Cir. 1990).  Accordingly the Court should deny the Motion.

17           **B.      <u>Intervenors Are Not Entitled To Permissive Intervention</u>**

18           The Court should also dismiss Intervenors' request for permissive intervention.

19   Intervention will unduly delay the case because it will add collateral issues, and will cause

20   prejudice to SolarCity because it will be unable to litigate the merits of the cases separately.

21   Courts sparingly permit intervention under Fed. R. Civ. P. 24(b) upon timely motion only "when

22   an applicant's claim or defense and the main action have a question of law or fact in common."

23   *Daggett v. Comm'n on Gov. Ethics and Election Practices*, 172 F.3d 104, 112-13 (1st Cir. 1999);

24   *see* Fed. R. Civ. P. 24(b)(1)(B).  Permissive intervention is "wholly discretionary," and the court

25

26   _____
    [4] Intervenors also raise the puzzling argument that because the *Gibbs* plaintiffs do not allege a
27   class relating to violation of the TCPA based on use of an artificial or prerecorded voice, they
    cannot adequately represent the *Morris* plaintiffs.  The requirement at issue is whether existing
28   parties adequately represent the subject matter and interests in *Gibbs*, and this merely
    demonstrates that Intervenors seek to introduce collateral issues to this litigation.

1    "may block intervention where intervention would unduly delay or prejudice the adjudication of

2    the original parties' rights."  *Glass Dimensions, Inc. ex rel. Glass Dimensions, Inc. Profit Sharing*

3    *Plan & Trust v. State. St. Bank & Trust Co.*, 290 F.R.D. 11, 14 (D. Mass. 2013); *U.S. v.*

4    *Metropolitan Dist. Com'n*, 147 F.R.D. 1, 6 (D. Mass. 1993).  The request for permissive

5    intervention also "may be denied if the intervenor raises collateral or extrinsic issues, even though

6    the petition presents a common question of law or fact."  *City of Rockford v. Secretary of Housing*

7    *and Urban Development*, 69 F.R.D. 363, 366 (N.D. Ill. 1975) (citing 33B J. Moore, *Federal*

8    *Practice*, ¶ 24.10[4], at 24-394).

9          As with Intervenors' request for intervention as of right, the motion for permissive

10    intervention is also premature.  Because a class has not yet been certified in either action,

11    "intervention would only serve to delay and complicate the case by adding additional plaintiffs

12    with claims arising out of separate sets of facts."  *Shanley v. Cadle*, 277 F.R.D. 63, 72 (D. Mass.

13    2011).  Permissive intervention would also prejudice the original parties to this action.

14    Intervention would force *Gibbs* plaintiffs to litigate different issues based on additional claims

15    raised by Intervenors, and it would deprive SolarCity of the opportunity to litigate the merits of

16    the two cases individually.[5]

17          Intervenors' Second Amended Complaint ("SAC") demonstrates that different facts are at

18    issue as between the two cases.  It defines the first common question of law and fact affecting all

19    parties in the *Morris* case as "Whether Defendants made telephone calls to class members using

20    an artificial or prerecorded voice without their prior express written consent."  ¶ 46(a).  Indeed,

21    the *Morris* action appears to focus on the issue of "artificial or prerecorded voice."  In another

22    section of the *Morris* SAC alleging "Facts Common To All Causes of Action," Intervenors

23    emphasize that "the TCPA prohibits 'initiat[ing] any telephone call to any residential telephone

24    line using an artificial or prerecorded voice'"; and that the FCC has found in particular that

25    "prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation

26

27    _____
     [5] In fact, counsel in the *Morris* case has already moved for the court in the Northern District of
28    California to appoint it as interim lead counsel, which SolarCity has opposed and is incorporating
     the arguments for opposition to that motion here. RJN, Exs. M, N.

DEF.'S OPPO. TO MOT. TO INTERVENE
                                                     AND TRANSFER
                                                     4:16-CV-11010-TSH

calls." *Morris* SAC ¶¶ 12-13.  This is a completely collateral issue to the *Gibbs* litigation.  The allegations in the *Gibbs* complaint state that a live person made calls to plaintiffs, and the complaint does not in any way allege a class based on an "artificial or prerecorded voice." Compl. ¶¶ 34, 40 (common questions of fact); *see* Mot. at 6 ("[T]he *Morris* Second Amended Complaint is additionally brought on behalf of a class of consumers contacted using an artificial or prerecorded voice. . . . [T]he *Gibbs* plaintiffs do not allege this kind of TCPA violation . . . ."). A class certified in *Morris* on the basis of this alleged common question of fact would not even include either of the *Gibbs* plaintiffs.

Other factual differences between the two actions implicate questions of consent to the call under the TCPA (*Gibbs*) and vicarious liability for actions by Lead Genesis (*Morris*).  For example, the two *Gibbs* plaintiffs had direct in-person meetings with SolarCity representatives and ultimately received follow up calls from SolarCity regarding those contacts.  Compl. ¶¶ 22, 29-30.  None of the Intervenors allege such interactions with SolarCity.  Intervenors' claims also involve allegations that a co-defendant in the *Morris* action, Lead Genesis, was in fact the one making the calls to Intervenors, not SolarCity.  *Morris* SAC ¶ 26.  SolarCity's liability for actions of Lead Genesis is not at issue in this case.

These factual differences also implicate different legal provisions of the TCPA.  For example, Intervenors' claims relate to sections of the TCPA prohibiting the use of "artificial or prerecorded voice" while *Gibbs* plaintiffs' claims relate to separate sections of the TCPA regarding the use of an "automatic telephone dialing system."  *See* 47 U.S.C. § 227.  This also raises potential differences in interpretation of the TCPA between the two venues.  For example, because *Gibbs* plaintiffs specifically implicate 47 U.S.C. § 227(b)(1)(A)(iii) (calls made "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call"), whether plaintiffs were in fact "charged for the call" implicates differences in how the two venues might interpret the section of the TCPA.  Case law in the two venues suggests that the courts might take different approaches.  *Compare Karle v. Southwest Credit Systems*, No. 14-30058, 2015 WL 5025449, at *6 (D. Mass. June 22, 2015) ("Since there is no

*genuine* dispute that Plaintiff was not charged on a per call basis for Credit Acceptance's calls, Plaintiff's claim under 47 U.S.C. § 227(b)(1)(A)(iii) cannot succeed."); *with Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1258 (11th Cir. 2014) ("The Ninth Circuit has interpreted the TCPA as not requiring that the called party be charged for the call, albeit only in passing. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 950 (9th Cir.2009) (holding for the plaintiff despite the defendant's allegation that the plaintiff's TCPA claim was deficient because she was not charged for call).").

## IV.   THE COURT SHOULD DENY INTERVENORS' MOTION TO TRANSFER

In considering whether to transfer a case under § 1404, courts consider "the convenience of the parties and witnesses, the order in which jurisdiction was obtained by the district court, the availability of documents, and the possibilities of consolidation." *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987). "While the decision to transfer a case under § 1404 lies solely within the discretion of the trial court, there is a presumption in favor of the plaintiff's choice of forum . . . ." *Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 15 (D. Mass. 2002). Intervenors fail to demonstrate that the Court should transfer the *Gibbs* action.

### A.   *Gibbs* And *Morris* Allege Different Facts, Therefore The First-Filed Rule Does Not Apply

Intervenors argue for transfer under the first-filed rule, which states that where actions are identical or substantially similar, the forum of the first filed action is "generally preferred" but the party seeking transfer bears the burden of overcoming a "presumption in favor of the plaintiff's choice of forum." *Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 15 (D. Mass. 2002) (denying motion to transfer case to first-filed forum because intervenor failed to show that proposed transfer forum was more convenient). Additionally, "the later-filed case must be truly duplicative of the suit before the court . . . . The issue must have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Glover v. Ferrero USA, Inc.*, No. 11-1086, 2011 WL 5007805, at *4 (D.N.J. 2011) (finding that two putative nationwide class actions were not truly duplicative). Even if two cases are identical,

DEF.'S OPPO. TO MOT. TO INTERVENE
AND TRANSFER
4:16-CV-11010-TSH

1  "[w]here a case is filed first should weigh no more heavily in the district court's analysis than the

2  plaintiff's choice of forum in a section 1404(a) calculation." *Research Automation, Inc. v.*

3  *Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 982 (7th Cir. 2010).

4       In *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012), the court rejected

5  application of the first-filed rule where the "precise issues at stake differed between the

6  proceedings" and the "first-filed" lawsuit did not include a key party involved in the second

7  lawsuit.  In that case, defendant argued that the first-filed rule supported a stay pending

8  proceedings in parallel litigation.  *Id.* at 1298-99.  There, the second-filed action involved

9  allegations that defendants had violated an injunction against infringing a certain patent.  *Id.* at

10  1291-92.  At the same time, the first-filed action was an action seeking declaratory judgment of

11  noninfringement and invalidity of the same patent.  *Id.*  One of the parties allegedly in contempt

12  in the second-filed action was not a party to the declaratory judgment action.  *Id.*  There, because

13  a key party was missing from one of the actions and different issues arose from the two actions

14  despite the common patent at issue, the first-filed rule would not apply.  *Id.* at 1298-99.

15       These differences apply to the *Gibbs* and *Morris* cases.  As discussed above, a number of

16  factual differences preclude transfer of the *Gibbs* case.  The *Morris* SAC focuses on calls made

17  "using an artificial or prerecorded voice," while the *Gibbs* complaint relates to complaints that a

18  live person made calls to plaintiffs.  *Morris* SAC, ¶ 46(a); Compl. ¶¶ 34, 40.  The *Gibbs* plaintiffs

19  had direct in-person meetings with SolarCity representatives and the *Morris* plaintiffs did not.

20  Compl. ¶¶ 22, 29-30.  The *Morris* SAC names an additional defendant, Lead Genesis, which

21  Intervenors allege to have been the party actually making calls to the Intervenors.  *Morris* SAC ¶

22  26.  These allegations are not at issue in this case.  As in *Merial*, the differences in factual and

23  legal issues between the two actions and the difference in parties between the two actions counsel

24  in favor of denying transfer.  *See Merial*, 681 F.3d at 1298-99.

**B.     Plaintiff's Choice of Forum and Convenience of Witnesses Weigh Against
          Transfer.**

25

26       Other factors under § 1404 weigh against transfer.  Here, *Gibbs* Plaintiffs have chosen to

27  bring suit in this district.  Accordingly, Plaintiffs' choice of forum in the Federal District Court of

28

DEF.'S OPPO. TO MOT. TO INTERVENE
AND TRANSFER
4:16-CV-11010-TSH

Massachusetts militates in favor of this Court retaining jurisdiction. *Nowak v. Tak How Invs. Ltd.*, 94 F.3d 708, 719 (1st Cir. 1996) ("There is a strong presumption in favor of a plaintiff's forum choice.").

Moreover, the convenience of the parties and witnesses weighs in favor of retaining jurisdiction here. Plaintiffs in this case are from Massachusetts and Connecticut. Compl. ¶¶ 6-7. All of the Plaintiffs' witnesses in the *Gibbs* litigation are thereby likely to hale from New England. Both this factor and the first factor, weigh in particular favor of this Court maintaining jurisdiction since no court has yet certified either the Plaintiffs' or the Intervenors proposed classes. *See George v. Uponor, Inc.*, 290 F.R.D. 574, 578 (D. Minn. 2013) (denying motion to intervene where class certification is not a forgone conclusion and court may ultimately certify a smaller-than-nationwide class in instant action, or deny certification all together). Thus, the Court should not assume that class members that may never exist or may exist at a smaller that nationwide scale will eventually outweigh the convenience to the existing parties and witnesses. *Id.* If the Court grants intervention, and either scenario occurs, they would have intervened without a right to do so. *Id.*; *see* Fed. R. Civ .P. 24(a)(2); *see also Estaman v. First Data Corp.*, 2011 WL 1327707, *4 (D.N.J. Apr. 5, 2011) (finding in part that motion to transfer was premature where no decision regarding class certification had been made); *see also Gatza v. DCC Litigation Facility, Inc.*, 2008 WL 880181, *4 (E.D. Mich. March 31, 2008) ("Because this case in not yet ready for trial and there are pretrial proceedings ongoing . . . the motion to transfer the case is premature.")

If the Court does not ultimately certify the class, and the Court grants Intervenors' request to transfer, the transfer will cause significant inconvenience to Plaintiffs by forcing them to travel across the country to litigate their individual claims. *See id.*; *Sindi v. El-Moslimany*, 2014 WL 6893537, *12 (D. Mass. Dec. 5, 2014) (holding no basis for transfer where there are witnesses in Massachusetts, a number of the challenged events took place in Massachusetts, and the injury alleged by plaintiff occurred in Massachusetts); *c.f. Cianbro Corp.*, 814 F.2d at 11 (plaintiff failed to demonstrate any real convenience litigating in New Hampshire rather than in Maine due to the relative proximity of the federal districts). Accordingly, any determination regarding the

DEF.'S OPPO. TO MOT. TO INTERVENE
AND TRANSFER
4:16-CV-11010-TSH

1  potential for consolidation would be premature where none of the proposed classes in either case

2  have been certified.

3        **C.**      **The Court Should Summarily Reject The Baseless And Specious Allegations**

4              **Of A Reverse Auction**

5        While Intervenors expend additional effort defining a "Reverse Auction" to argue in favor

6  of transfer, they provide no evidence of facts of the likelihood of this occurring.  Intervenors

7  cannot deduce collusive actions out of thin air, and the fact that counsel in each respective case

8  may seek to certify a class, does not create "a perverse incentive to settle this case as quickly and

9  as cheaply as possible so that they are not denied fees."[6]  Mot. at 11.  Even in cases where

10  settlement discussions among the various parties took place, "the fact that the defendants carried

11  on parallel settlement discussions in parallel class actions is standard litigation procedure that

12  does not give rise to an inference of improper collusion." *In re Celexa & Lexapro Mktg. & Sales*

13  *Practices Litig.*, No. MDL 09-2067-NMG, 2014 WL 2547543, at *2–3 (D. Mass. June 3, 2014);

14  *see also Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116- IEG WMC, 2012 WL 5873701, at

15  *4 (S.D. Cal. Nov. 20, 2012) ("Rather than concern with or critical of reverse auctions, Cole

16  simply appears unhappy that his was not the class CRST chose to settle with, and thus this

17  insinuation provides no support to his objection.").

18        The allegation that a subsequently-filed class action is a "copycat" also fails to implicate a

19  "reverse auction."  Where an Intervenor's only allegation of "underhanded activity" is that the

20  case is a "copycat" of Intervenor's case, that allegation alone "cannot support the indictment of a

21  'reverse auction.'" *Cohorst v. BRE Properties, Inc.*, No. 3:10-CV-2666-JM-BGS, 2011 WL

22  3489781, at *8 (S.D. Cal. July 19, 2011), report and recommendation adopted, No. 10CV2666

23  JM BGS, 2011 WL 3475274 (S.D. Cal. Aug. 5, 2011).

    **V.**      **CONCLUSION**

24        For the above reasons, SolarCity respectfully requests that the Court deny Intervenors'

25  Motion to Intervene and Transfer.

26

27  _____

28  [6] Indeed, as this argument seems to shed light on Intervenors' intended actions, it serves as an additional reason not to grant their request.

Dated:  August 10, 2016

CHRISTINA GUEROLA SARCHIO (admitted *pro hac vice*)
Orrick, Herrington & Sutcliffe LLP


By:    /s/ Christina Guerola Sarchio

CHRISTINA GUEROLA SARCHIO (DC Bar No. 456254)
1152 15th Street NW
Washington DC 20005
202-339-8687
csarchio@orrick.com

JOHN O. MIRICK
Mirick, O'Connell, DeMallie & Lougee
1700 Bank of Boston Tower
100 Front St.
Worcester, MA 01608

Attorneys for Defendant SolarCity Corporation

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above papers were filed through the Court's ECF system, which will serve the papers electronically to all counsel of record.

    /s/ Christina Guerola Sarchio