**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CAROLE GIBBS and ARTHUR COLBY, individually and on behalf of all others similarly situated,

*Plaintiffs,*

*and*

GEORGE MORRIS, JOSE ALBINO LUCERO JR. and DAVID HALL,

*Proposed Plaintiff-Intervenors*

v.

SOLARCITY CORPORATION, a Delaware corporation,

*Defendant.*

Case No. 4:16-cv-11010-TSH

**CLASS ACTION**

**DEMAND FOR JURY TRIAL**

**PLAINTIFFS GIBBS AND COLBY'S OPPOSITION TO MOTION BY PROPOSED INTERVENORS TO INTERVENE AND TRANSFER**

## I. INTRODUCTION

Given the contingent nature of attorney compensation in the plaintiffs' bar, it is of little surprise when concurrently-prosecuted class actions lead to tension among competing groups of plaintiffs (or more appropriately, their lawyers). Often times—when, for example, plaintiffs' counsel is able to self-order and work cooperatively with each other—such competition adds value by strengthening the claims and bolstering the resources available for the case. In other instances, however, attorney in-fighting can distract the parties, lawyers, and courts involved and ultimately delay, and even derail, effective prosecution. Such problems are particularly acute where one set of attorneys seeks to exert total control over all lawsuits filed and shuns discussing cooperation until they have fortified their leadership role.

Unfortunately, the instant Motion to Intervene and Transfer falls into the latter category. That is, Proposed Intervenors George Morris, Jose Albino Lucero Jr., and David Hall, through their attorneys, Bursor & Fisher, P.A., seek to intervene in this case and have it transferred to their pending action in the Northern District of California where they have already filed a motion to be appointed lead class counsel. On top of this, their lawyers refuse to discuss working cooperatively with counsel for Gibbs and Colby until their various motions have been decided.

As explained below, the Motion to Intervene and Transfer should be denied. In their rush to take over this litigation, Proposed Intervenors assert, incorrectly, that they are entitled to intervene as of right under Rule 24(a) and that the Court should grant permissive intervention under Federal Rule 24(c). No intervention should be allowed here. Try as they may to denigrate counsel for Gibbs and Colby, the simple truth is that, to the extent the cases can truly be said to overlap, the Proposed Intervenors' rights are adequately protected. Further, the motion to intervene is premature, and Proposed Intervenors have shown no realistic threat that their interests will somehow be impeded.

Similarly, the request for transfer of the case under 28 U.S.C. § 1404(a) or the First-to–File rule also fails. Indeed, to hear Proposed Intervenors tell it, whenever a putative class action is filed any subsequent matter that is "substantially similar" must be transferred to whatever forum the first set of attorneys happened to select. But that is not the law. Moreover, the class definitions do not overlap and the interests of justice by no means require transferring this matter to the Northern District of California.

Finally, Proposed Intervenors' concerns about the potential for a "reverse auction" are entirely unfounded. No settlement discussions are occurring at all, let alone simultaneously between two groups so as to trigger a "race to the bottom." And in any case, the accusation itself

seems little more than an attempt to paint counsel for Gibbs and Colby as somehow inadequate or ineffectual before any analysis of such elements is conducted under Federal Rule 23(a)(4).

The simple truth is that, rather than accept counsel for Gibbs and Colby's invitation to discuss the contours of the case and the potential for working together, lawyers for Proposed Intervenors have hurried to seize command of this lawsuit and the litigation in California so that they can ensure themselves a payday. In the process, they overstate the similarities between the two matters and, perhaps unwittingly, have shortchanged the Plaintiffs and class members in both cases. As such, and as explained further below, the Court should deny the Proposed Intervenors' Motion to Intervene and Transfer.

## II. BACKGROUND FACTS & PROCEDURAL HISTORY

***SolarCity's Calls and the Claims in Both Cases***

SolarCity, a maker and installer of solar energy systems, makes autodialed calls to cellphones and landlines in violation of the TCPA. (Compl. ¶ 12.) These include calls to consumers who have registered their telephone numbers on the national Do Not Call Registry (Compl. ¶ 14) and calls to consumers who have tried to opt out of the calls by requesting not to be called again (Compl. ¶ 18). Plaintiffs Gibbs and Colby filed their Complaint (Dkt. 1) on June 1, 2016, which was apparently six (6) days after Proposed Intervenors Morris, Lucero, and Hall ("Proposed Intervenors") filed a Second Amended Complaint in their own action against SolarCity pending in the Northern District of California (Case No. 3:15-cv-05107).

In support of their bid to intervene, Proposed Intervenors' assert that:

> [T]he *Gibbs* class action complaint was filed, making substantially the same claims as those previously made in the *Morris* complaint. ECF No. 1. The *Gibbs* complaint is brought on behalf of four proposed classes that are each subsumed by the *Morris* classes…Counsel for Defendant has acknowledge that there is substantial if not complete overlap between these two case, but has declined to consent to a transfer of the *Gibbs* action.

(Proposed Intervenors' Mot. to Intervene at 3.) In support, Proposed Intervenors present the Declaration of attorney Joshua D. Arisohn, who claims that:

> On July 11, 2016, I had a telephone call with Randy Luskey of Orrick, Herrrington & Sutcliffe LLP, counsel for SolarCity in the *Morris* action. During that call, Mr. Luskey acknowledge [*sic*] that the classes in *Gibbs* substantially if not completely overlap with those in the *Morris* action.[1]

(Arisohn Decl. ¶ 8. (Dkt. 17)).[2]

Notwithstanding Proposed Intervenors' assertions that the classes in the *Gibbs* matter are "subsumed by the *Morris* classes" and that the claims are "substantially the same," a review of the operative pleadings shows that this is not actually the case. The following is a side-by-side comparison of the class definitions in both matters:

| **Proposed Intervenors' Complaint (dkt. 17)** | **Plaintiffs' Complaint (Dkt. 1, ¶ 37)** |
|---|---|
| **1. Robocall Class (Intervenor's Compl. ¶ 37):**<br><br>All persons within the United States who (a) received a nonemergency telephone call; (b) on his or her cellular telephone or residential telephone line; (c) made by or on behalf of any<br>Defendant in order to promote its products or services; (d) for whom that Defendant had no record of prior express written consent; (e) and such phone call was made with the use of an artificial or prerecorded voice; (f) at any time in the period that begins four years before the filing of the complaint in this action to the date that class notice is disseminated. | **1. Autodialed No Consent Class**:<br><br>All persons in the United States who (1) SolarCity caused to be called using an ATDS, (2) on the person's cellular telephone number, (3) for the purpose of selling SolarCity's products and services, and (4) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiff.<br><br>**2. Autodialed Do Not Call Class**:<br><br>All persons in the United States who (1) SolarCity caused to be called using an ATDS, (2) on the person's cellular telephone, (3) for |

[1] Mr. Luskey's supposed statement, offered by Proposed Intervenors to prove the truth of the matter asserted, is hearsay and should be disregarded. In any case, it is inaccurate in light of the differences between the allegations and class definitions.

[2] According to attorney Arisohn, the day immediately following this conversation, July 12, 2016, Bursor & Fisher, P.A. moved to be appointed interim lead counsel in the *Morris* action.

**2. Autodialer Class (Intervenor's Compl. ¶ 38)**:

All persons within the United States who (a) received a nonemergency telephone call; (b) on his or her cellular telephone or residential telephone line; (c) made by or on behalf of any
Defendant in order to promote its products or services; (d) for whom that Defendant had no record of prior express written consent; (e) and such phone call was made with the use of an automatic telephone dialing system as defined under the TCPA; (f) at any time in the period that begins four years before the filing of the complaint in this action to the date that class notice is disseminated.

**3. National Do Not Call Class (Intervenor's Compl. ¶ 40)**

All persons in the United States who: (a) received more than one telephone solicitation call, initiated by any Defendant to promote its products or services; (b) in a 12–month period; (c) on their cellular telephone line or residential telephone line; (d) more than 30 days after registering their telephone number(s) on the National Do Not Call Registry; and (e) at any time in the period that begins four years before the filing of the complaint in this action to the date that class notice is disseminated.

the purpose of selling SolarCity's products and services, (4) after the person informed SolarCity that s/he no longer wished to receive calls from SolarCity.

**3. Do Not Call Registry Class**:

All persons in the United States who (1) SolarCity caused to be called more than one time on his/her telephone, (2) within any 12-month period, (3) where the telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for the purpose of selling SolarCity's products and services, and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.

**4. Telemarketing Revocation Class**:

All persons in the United States who (1) SolarCity caused to be called, (2) on the person's telephone number, (3) for the purpose of selling SolarCity's products and services, (4) where the person requested that the calls stop yet s/he received at least one additional call more than thirty (30) days after the request, and at least two calls within a 12-month period, and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiff.

The Class Definitions are plainly not the same. While membership in Proposed Intervenors' classes requires that SolarCity have no record of prior express consent,[3] members in Gibbs and

[3] As explained below, such terms in the class definitions render Proposed Intervenors' definitions improper "fail safe" classes (*i.e.*, as the class definitions merely parrot the elements of various TCPA claims, membership in the classes necessarily entitles the class members to relief.) That is distinguishable from Gibbs and Colby's class definitions that peg membership to persons who SolarCity claims consented in the same way as the named plaintiffs. Whether that method, to be

Colby's classes consented in the same way that SolarCity claims Gibbs and Colby consented. Likewise, nowhere do Proposed Intervenors account for consumers like Gibbs and Colby who specifically asked not to be called yet continued to receive such calls—while two of Gibbs and Colby's class definitions (Autodialed Do Not Call Class and telemarketing Revocation Class) hinge on such stop calling requests.

Proposed Intervenors Morris, Lucero, and Hall also differ from Plaintiffs Gibbs and Colby insofar as none of the Proposed Intervenors admits to ever having any contact with SolarCity. Indeed, Proposed Intervenors' Second Amended Complaint in California and their proposed Complaint in Intervention both allege that:

> Prior to the calls at issue in this action, Plaintiff-Intervenor George Morris had never had any contact with Defendant. Mr. Morris has never consented in writing, or otherwise, to receive telephone calls from Defendant. Plaintiff-Intervenor Morris has never provided Defendant with his residential telephone number. (Intervenors' Compl. ¶ 14 (Dkt. 17-3)).
>
> Prior to the calls at issue in this action, Plaintiff-Intervenor Jose Albino Lucero Jr. had never had any contact with Defendant. Mr. Lucero has never consented in writing, or otherwise, to receive telephone calls from Defendant. Plaintiff-Intervenor Lucero has never provided Defendant with his cellular telephone number. (Intervenors' Compl. ¶ 25 (Dkt. 17-3)).
>
> Prior to the calls at issue in this action, Plaintiff-Intervenor David Hall had never had any contact with Defendant. Mr. Hall has never consented in writing, or otherwise, to receive telephone calls from Defendant. Plaintiff-Intervenor Hall has never provided Defendant with his cellular telephone number. (Intervenors' Compl. ¶ 30 (Dkt. 17-3)).

Moreover, in the *Morris* case the Proposed Intervenors allege that the calls were being made by co-Defendant Lead Genesis, Inc. (Intervenors' Compl. ¶¶ 1, 24.)

---

confirmed through discovery, constitutes prior express consent under the TCPA is a question of fact and law common to the members of Gibbs and Colby's classes.

These allegations contrast sharply from the Gibbs and Colby's Complaint, as both of the instant plaintiffs admit that they had had prior contact with SolarCity and that SolarCity, not Lead Genesis, was the party who called them. Indeed, Gibbs alleges that:

> Approximately two years ago, a salesman visited Plaintiff Gibbs offering SolarCity's products and services. After some initial interest, Plaintiff Gibbs informed the salesman that she was not interested in doing business with SolarCity. (Compl. ¶ 22.)

Plaintiff Colby similarly alleges that:

> Approximately six months ago, Plaintiff Colby visited Defendant SolarCity's website and requested a quote for solar panels to be installed at his house. Thereafter, Defendant SolarCity performed a site visit to Plaintiff Colby's house to assess the positioning of his house and to provide a quote for the installation of solar panels. Defendant SolarCity informed Plaintiff Colby that his house was not positioned well for a solar installation and that Defendant SolarCity would not be able to perform an installation. (Compl. ¶¶ 29-30.)

Because Gibbs and Colby acknowledge that they had some contact with SolarCity in the past, they are not covered by class definitions that hinge on a total absence of any record of prior express consent.

Proposed Intervenors further insist that the calls they received were placed with the use of an artificial and pre-recorded voice. (Intervenors' Compl. ¶¶ 24 (Morris), 29 (Lucero)). Gibbs and Colby make no such allegations, meaning neither can be considered as a member of Proposed Intervenors' Robocall Class. Additionally, and unlike the Proposed Intervenors' Complaint, Plaintiffs Gibbs and Colby allege that they each informed SolarCity to stop calling them but continued to receive calls. (Compl. ¶¶ 23, 32.)

These distinctions are critical. Whereas discovery in the *Morris* action will necessarily focus on uncovering: (1) whether SolarCity had a record of prior express consent to call, (2) how SolarCity came into possession of the Proposed Intervenors' telephone numbers, and (3) whether a pre-recorded voice was used, such questions are <u>not</u> at issue in the instant case. Likewise, while

discovery in the instant case will be needed regarding the Plaintiffs' stop calling requests and SolarCity's processing (or lack thereof) of such requests, those claims are not implicated in the *Morris* action at all. As such, and contrary to Proposed Intervenors' unsupported and conclusory assertions, the claims are not the same, and the class definitions do not overlap.

***Proposed Intervenors' Decline Invitations to Discuss Working Cooperatively***

On July 26, 2016 attorney Arisohn contacted Plaintiffs' local counsel, Julie Tolek, and asked if she was available for a quick call to meet and confer regarding a motion to intervene that he indicated would be filed that same day. (*See* "Arisohn Emails," true and accurate copies of which are attached as Group Ex. A.) Plaintiffs' counsel responded that they were unavailable to speak that very day, and that the request did not give adequate time to consider the proposed intervention, but asked if Mr. Arisohn could speak the following day.

Counsel for the Parties thereafter engaged in a telephone call on July 27, 2016. During the call Mr. Arisohn indicated that, in his view, the *Gibbs* Complaint was a copycat suit and that his clients planned on intervening and moving to transfer the case to the *Morris* litigation. (*See* Declaration of Attorney Steven Woodrow in Support of Plaintiffs' Opposition to Intervention, ("Woodrow Decl.") ¶ 6, a true and accurate copy of which is attached as Ex. B.) Mr. Arisohn further indicated his belief that all claims in the *Gibbs* case were subsumed or covered by the claims alleged in *Morris*, even the allegations that SolarCity called after any consent had been revoked. (*Id*. ¶ 7.) When Plaintiffs' counsel asked whether Mr. Arisohn's firm had any interest in working cooperatively on the cases together, Mr. Arisohn replied that any such discussions would have to wait until his firm's motions to intervene and to be appointed interim lead counsel were decided. (*Id*. ¶ 8.)

Shortly thereafter Plaintiffs' counsel indicated that they needed more time to respond to the intervention motion. (*See* "Arisohn Emails," Group Ex. A.) Mr. Arisohn responded that Proposed Intervenors would only agree to an extension if Plaintiffs and SolarCity stipulated to not discussing settlement at all until the motion to intervene was decided. (*Id*.) Attorney Arisohn indicated that this was necessary given Proposed Intervenors' apparent concern that SolarCity would engage in a reverse auction, despite the fact that SolarCity was not negotiating settlement with either set of attorneys. (*Id*.) For its part, SolarCity did not oppose the request, and on August 10, 2016, Plaintiffs' filed their Motion for an Extension of Time to Respond. (Dkt. 25.)

As explained further below, on these facts the Motion to Intervene and Transfer should be denied.

## III. ARGUMENT

Choosing competition over cooperation, Proposed Intervenors seek to both intervene in this matter and to have it transferred to the Northern District of California where their lawyers' Motion for Appointment of Interim Lead Counsel has been pending since July 11, 2016 (and, as of August 25, 2016, will be decided by Judge Seeborg without oral argument). Intervention and transfer should be denied. As explained below, no basis exists for intervention as of right or for allowing permissive intervention. Likewise, neither 28 U.S.C. § 1404(a) nor the first-to-file rule support transferring the case to California. Put simply, the parties, classes, and claims differ in important ways that indicate the cases are not "substantially similar" so as to warrant the relief Proposed Intervenors (or, more accurately, their attorneys) seek.

### A. Morris, Lucero and Hall fail to show they are entitled to intervene as of right under Rule 24(a).

#### 1. Given the differences in the pleadings, Proposed Intervenors don't actually have an interest in this case.

Intervention as of right should first be denied because Proposed Intervenors fail to show that they have an interest in this case that will be impeded absent intervention. As explained above (Section II, *supra*), contrary to Proposed Intervenors unsupported assertions, the two cases differ from one another in several important ways. Gibbs and Colby admittedly had prior contact with SolarCity, were not called with a pre-recorded voice, were apparently not called by a third party, and they make no claim that SolarCity lacked any record of prior express consent at the time they were called (although they do claim that such consent was insufficient under the TCPA). As such, the only interest Proposed Intervenors can possibly point to is both speculative and economic: should the class be certified with class definitions that are expanded to actually cover Proposed Intervenor's claims, then their lawyers may miss out on attorneys' fees. Yet this is insufficient to show an interest in the case. As the court in *Cole v. NIBCO, Inc.*, explained:

> Although the Third Circuit recognizes "no precise and authoritative definition of the interest" exists, generally, an "economic interest in the outcome of litigation is insufficient to support a motion to intervene." (See *Kleissler v. U.S. Forest Service*, 157 F.3d 964, 969 (3d Cir. 1998)); See also *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 221 (3d Cir. 2005) (quoting *Mountain Top*, 72 F.3d at 366). The "mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene." *Id.* (See also *United States v. Alcan Alum., Inc.*, 25 F.3d 1174, 1185 (3d Cir. 1994)) ("Some courts have stated that a purely economic interest is insufficient to support a motion to intervene.")

No. 313CV07871FLWTJB, 2016 WL 1313106, at *2 (D.N.J. Apr. 4, 2016). And even if a class were certified, it would still be unlikely that that would amount to an interest sufficient to warrant intervention. As the lawyers for Proposed Intervenors were notified in another case where they unsuccessfully attempted a similar intervention:

> Here, Movant has not shown that his interest would be impaired by the case moving forward without him intervening. In fact, quite the opposite is true because if the class is certified, the Court would deem that Movant's interests are adequately protected. *See* Fed.R.Civ.P. 23(a)(4). If, on the other hand, the class is not certified than [*sic*] Movant remains free to file an independent action to pursue his claims.

> Moreover, Movant can opt out of any class that may ultimately be certified in order to pursue his claims independently. Thus, the Court finds that Movant has not demonstrated a real deprivation of interests.

*Waudby v. Verizon Wireless Servs., LLC*, 248 F.R.D. 173, 175 (D.N.J. 2008) (citing *In re Safeguard Scientifics*, 220 F.R.D. 43, 48-49 (E.D.Pa. 2004) (the court denied a proposed intervention of a class member under Rule 24 because the class member was free to pursue an individual claim)).

Indeed, if Proposed Intervenors' interpretation of the law actually had merit (it doesn't), intervention as of right and transfer would be appropriate anytime a similar, though not identical, putative class action was filed in a different jurisdiction. Not only would this obviate the need for the Judicial Panel on Multidistrict Litigation—as any subsequent class actions would necessarily be transferred to wherever the first supposedly similar case was filed—it would encourage unnecessary "races to the courthouse." As such, the Court should find Proposed Intervenors have failed to articulate an interest in need of protection.

**2. The Court should reject Proposed Intervenors' attempt to characterize Plaintiffs Gibbs and Colby or their counsel as being somehow inadequate.**

Proposed Intervenors' next argument, that Gibbs and Colby (and their supposedly ineffectual lawyers) will fail to protect their interests (Mot. to Intervene 4-5), similarly goes nowhere. Adequacy of counsel will be decided following discovery and during the class certification process in accordance with Federal Rule 23(a)(4). There is no basis for concluding at this point that Gibbs and Colby's attorneys, who are experienced class action lawyers, are somehow inadequate.

Rather, Proposed Intervenors premise their attack on counsel for Gibbs and Colby by pointing to the supposed inherent risk of a reverse auction that they claim is present whenever

similar class actions are pending in different jurisdictions. This is simply too speculative, especially given the representations of Gibbs and Colby's counsel that no settlement negotiations of any stipe have occurred to date and counsel for SolarCity's confirmation that no settlement talks have occurred in the *Morris* action either. Counsel for Proposed Intervenors failed to explain how any auction could occur without any settlement negotiations, choosing instead to insist that the risk of it occurring at some point was sufficient to warrant intervention (and to warrant Proposed Intervenors' refusal to consent to Plaintiffs having additional time to respond to their intervention papers). The simple truth is that any concerns regarding a reverse auction are simply too speculative to establish Plaintiffs' counsel as being inadequate.

Furthermore, it is important to again recall that the cases are not identical: Gibbs and Colby had prior contact with SolarCity and they were not called by a third party using a pre-recorded voice by a third party. As such, expecting Gibbs and Colby to advance such claims simply because other consumers who are not included in the classes alleged in this case would be unreasonable. Proposed Intervenors are protected by their own separate case.

**3. In any case, the Motion to Intervene is Premature.**

Finally with respect to intervention as of right, the Motion to Intervene is premature. [C]ourts should not encourage premature motions to intervene, *Floyd v. City of New York*, 302 F.R.D. 69, 87 (S.D.N.Y.), *aff'd in part, appeal dismissed in part*, 770 F.3d 1051 (2d Cir. 2014) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir.1977)). Here, intervention is premature because a class has yet to be certified and it is unclear which claims are actually at issue in this litigation given SolarCity's Motion to Dismiss.

Courts have recognized that intervention before class certification is often premature given the uncertainty surrounding the scope of the potentially to-be-certified class. *See George v.*

*Uponor, Inc.*, 290 F.R.D. 574, 577 (D. Minn. 2013) ("[G]ranting intervention might prompt a 'torrent' of other parties to seek intervention as well.") (*citing Siegel v. Lyons,* No. C–95–3588 DLJ, 1996 WL 634206, at *8 (N.D.Cal.1996) ("As this court has yet to reach the class certification issue, and in the absence of some other justification for adding an additional plaintiff to this action, granting [the motion to intervene] at this time would unnecessarily complicate and delay this litigation.") This is especially applicable here given the differences between the two cases. For example, given that both Gibbs and Colby acknowledge that each of them had at least *some* prior contact with SolarCity, in the event the Court ultimately certifies a class of persons who had had a previous interaction with the company but claimed that such contact was insufficient to confer prior express consent on SolarCity to place autodialed calls, Proposed Intervenors wouldn't be included in the lawsuit, and they would have "intervened by right without any right to do so." *George*, 290 F.R.D. at 577-78.

Moreover, it is unclear whether Proposed Intervenors' Class Definitions will even remain as they are presently worded. This is because by defining their classes to require no record of any prior express consent, Proposed Intervenors have presented prohibited "fail safe" classes. See *In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 (1st Cir. 2015) (explaining that a fail safe class is one that "impermissibly determines membership based upon a determination of liability"); *Campbell v. First Am. Title Ins. Co.*, 269 F.R.D. 68, 73 (D. Me. 2010) (same); *Lewis v. First Am. Title Ins. Co.*, 265 F.R.D. 536, 551 (D. Idaho 2010). Because Proposed Intervenors' class definitions suffer from a fatal flaw, they will need to be fixed by amendment at some subsequent point in the proceedings. Until that occurs, it is too early to conclude that there is any overlap, let alone "substantial" duplication so as to warrant intervention as of right.

Similarly, the contours of the instant litigation haven't even been established yet in light of SolarCity's Motion to Dismiss. (Dkt. 31.) *See Buffin v. City & Cty. of San Francisco*, No. 15-CV-04959-YGR, 2016 WL 374230, at *6 (N.D. Cal. Feb. 1, 2016) ("[T] he merits of CBAA's request are appropriately assessed *after* plaintiffs have amended the complaint to make its claims clear. Only once the Court understands the relief plaintiffs seek in this case, and the defenses the City and CBAA intend to raise in response thereto, can intervention be sufficiently addressed.") (Emphasis in original). Hence, intervention prior to SolarCity's answer would be premature.

Put simply, Proposed Intervenors haven't shown, at least at this point in the cases, that they have a right worthy of protection that present counsel will somehow fail to protect.

**B. Proposed Intervenors also fail to provide any basis for granting them permissive intervention under Federal Rule 24(c).**

Without a right to intervene, Proposed Intervenors ask the Court to allow them to intervene permissively. As SolarCity aptly explains, "The request for permissive intervention also 'may be denied if the intervenor raises collateral or extrinsic issues, even though the petition presents a common question of law or fact.'" (Solar City Opp. 10.) (quoting *City of Rockford v. Secretary of Housing and Urban Development*, 69 F.R.D. 363 (N.D. Ill. 1975)); see also *Valley Ctr. Pauma Unified Sch. Dist. v. Interior Bd. of Indian Appeals of U.S. Dep't of the Interior*, No. 11CV1260 AJB BGS, 2012 WL 1033576, at *2 (S.D. Cal. Mar. 27, 2012).

Here, again, Gibbs and Colby were not called using a pre-recorded voice by Lead Genesis, Inc, and they do not make inclusion in the class dependent on SolarCity's lack of any record of prior consent. In fact, the only arguable overlap concerns the claims that SolarCity made multiple calls within a 12-month period to persons whose numbers were registered on the Do Not Call list, yet the classes are still different because Gibbs and Colby limit their Do Not Call Registry Class to persons who supposedly provided prior express consent in the same

manner as Gibbs and Colby purportedly consented. No consent is referenced in Proposed Intervenors' National Do Not Call class at all.

In light of these differences, the Proposed Intervenor's Complaint raises extraneous issues even if some degree of overlap were to be assumed. Whereas Gibbs and Colby's cases will focus on whether the prior interactions with SolarCity through in person meetings and visits to SolarCity's website were sufficient to confer prior express consent, Proposed Intervenors case hinges on whether there was any "record" of prior express consent, whether a pre-recorded voice was used, and the impact and relevance of Lead Genesis. As such, Proposed Intervenors' would necessarily delay these proceedings while focusing on their own claims.

Other relevant factors include the extent to which the proposed intervenor will be prejudiced if intervention is denied, and any unusual circumstances which militate for or against intervention. *Gen. Elec. Capital Corp. v. Palwaukee Motor Inn*, No. 90 C 4880, 1990 WL 156373, at *1 (N.D. Ill. Oct. 5, 1990); *Smith v. Board of Election Comm'rs for City of Chicago,* 103 F.R.D. 161, 163 (N.D. Ill.1984). No prejudice is present here. Proposed Intervenors are already litigating their separate cases in a separate forum, and to the extent any class is certified (adversarily or following a settlement) that covers their claims, they can opt-out, object, or take other action short of intervention to protect their supposed interests.

Put simply, no basis for permissive intervention exists either.

**C. Neither 28 U.S.C. § 1404(a) nor the First-to–File rule support a transfer here.**

The "first to file" rule gives a court "the power" to "enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court"

and "is used to dismiss or state a later-filed action."[4] *FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733, 737 (E.D. Pa. 2005) (emphasis added). In the context of a class action, "the classes, and not the class representatives, are compared." *Adoma v. Univ. of Phoenix, Inc.*, 711 F.Supp.2d 1142, 2010 WL 1797263, at *5 (E.D. Cal. 2010) (citing *Ross v. U.S. Nat'l Ass'n*, 542 F.Supp.2d 1014, 1020 (N.D. Cal. 2008)).

As demonstrated above, the class definitions are not identical. Indeed, Proposed Intervenors forego any analysis of the proposed classes in favor of a blanket statement that the *Morris* classes subsume the classes alleged in the instant case and a supposed admission by one of SolarCity's lawyers that "the classes in *Gibbs* substantially if not completely overlap with those in the *Morris* action." (Arisohn Decl. ¶ 8.) SolarCity's brief makes it abundantly clear, however, that SolarCity's position is that the classes do not actually overlap. Again, Proposed Intervenors' classes require no record of any consent and involve calls placed by third party Lead Genesis. Meanwhile, two of the four classes Gibbs and Colby seek to have certified address calls made after they asked not to be called anymore—allegations conspicuously absent from Proposed Intervenors' Complaint. (Dkt. 17-3.) Put simply, the class definitions meaningfully differ so as to render the first to file rule inapplicable here.

Furthermore, Gibbs and Colby, who hail from Massachusetts and Connecticut, would be highly inconvenienced if their case was transferred all the way across the Country to California and heard alongside Proposed Intervenors' distinct and separate claims. That is, Gibbs and Colby would need to wait while Proposed Intervenors sought and obtained information about Lead Genesis, the use of a pre-recorded voice, the absence of any record of prior express consent, and the manner by which SolarCity came into possession of Proposed Intervenors' telephone

---

[4] Proposed Intervenors have moved to *transfer* under the first to file rule, which is improper.

numbers. And as Proposed Intervenors have alleged no claims regarding calls made after requests by consumers for the calls to stop, such claims by Gibbs and Colby would take a back seat to the Proposed Intervenors' actual claims.

The simple truth is that counsel for Proposed Intervenors want to reduce the risk that a settlement in this case will deny them the ability to earn attorneys' fees by making blanket statements that the cases "substantially overlap" when they do not so as to induce this Court to transfer Gibbs and Colby's Complaint to their case where their Motion to Appoint Interim Lead Counsel awaits a ruling. There is no basis for transferring the claims to California.

### D. Proposed Intervenors misapprehend the concept—or risk presented here—of any "reverse auction."

Proposed Intervenors' final argument in favor of intervention and transfer is that such relief is purportedly necessary to avoid a reverse auction. (Mot. to Intervene 11.) Putting aside the implicit insults Proposed Intervenors hurl at counsel for Gibbs and Colby—going so far as to imply such attorneys are necessarily ineffectual and to expressly state that the "will have a perverse incentive to settle this case as quickly and as cheaply as possible so that they are not denied fees"—the reality is that the *Morris* case is different from the instant action. Gibbs and Colby filed this action precisely because the *Morris* case does not cover their claims (again, unlike the instant case, *Morris* involves consumers who assert that they never had any contact with SolarCity before the calls were made, that SolarCity used a pre-recorded voice, and that the calls were made by third party Lead Genesis. And Proposed Intervenors include no claims that any of the plaintiffs in *Morris* asked for the calls to stop and that such requests were ignored). If anything, Proposed Intervenors have an incentive to now seek to expand their ill-defined classes (perhaps via a third amended complaint) so as to cure their fail-safe issues and cover the claims of consumers like Gibbs, Colby, and the other class members alleged in this case.

Furthermore, *Morris* has not advanced to a point where the case is on the cusp of a class certification decision—let alone a ruling on summary judgment—from which it can be said that SolarCity's counsel is looking to settle with a competing group "on the cheap." Indeed, as both Plaintiffs' counsel and SolarCity's lawyers informed counsel for Proposed Intervenors repeatedly, no settlement negotiations are occurring at all, let alone parallel discussions that would enable SolarCity to play one set of attorneys off the other. As the Ninth Circuit has explained, such facts generally preclude a finding that a reverse auction is underway:

> No settlement was directly in prospect in this case, and it could not, therefore, be said that a settlement was being circumvented or co-opted.[1]More than that, there were no facts before the district court that supported the notion that some kind of collusion was afoot. Negrete Counsel floated out the specter of a reverse auction, but brought forth no facts to give that eidolon more substance. A reverse auction is said to occur when "the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant." *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 282 (7th Cir.2002). It has an odor of mendacity about it. Even supposing that would be enough to justify an injunction of one district court by another one, there is no evidence of underhanded activity in this case. That being so, if Negrete's argument were accepted, the reverse auction argument would lead to the conclusion that no settlement could ever occur in the circumstances of parallel or multiple class actions—none of the competing cases could settle without being accused by another of participating in a collusive reverse auction." *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1189 (10th Cir.2002) (internal quotation marks omitted).

*Negrete v. Allianz Life Ins. Co. of N. Am*., 523 F.3d 1091, 1099–100 (9th Cir. 2008). Similarly here, there is no evidence of any underhanded activity afoot in this case—because no such underhandedness has occurred. Rather, Proposed Intervenors have simply been overzealous in their bid to exert total control over all TCPA litigation against SolarCity, even if it means glossing over differences between the cases and ignoring invitations to work cooperatively together.[5]

[5] Indeed, had Proposed Intervenors simply accepted Plaintiffs' Counsel's invitation to work together—which is what attorneys interested in showing true leadership tend to do—the parties

In sum, concerns regarding the potential for a reverse auction are insufficient to warrant intervention or transfer of these proceedings to the Northern District of California.

## IV. CONCLUSION

Try as they may, Proposed Intervenors fail to show that they are entitled to intervene in this case either as of right or permissively. The cases are substantially different such that it cannot be said Proposed Intervenors have an interest in these proceedings that won't be protected by current counsel. The Motion to Transfer similarly fails. Transfer would be highly inconvenient for Plaintiffs Gibbs and Colby and nothing in the first to file rule compels a transfer where the issues and classes in the two cases differ as they do here. Finally, concerns regarding a reverse auction are, in addition to being unnecessarily disparaging, entirely unfounded. As such, the Court should deny the Motion to Intervene and Transfer.

WHEREFORE the Court should deny Proposed Intervenors' Motion to Intervene and Transfer and award such additional relief as the Court deems necessary, reasonable, and just.

Dated: August 31, 2016

Respectfully submitted,

/s/ Patrick H. Peluso
One of Plaintiffs' Attorneys

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
999 E Mexico Ave., Suite 300
Denver, Colorado 80210
Tel: 720.213.0675
Fax: 303.927.0809

---

could have joined their pleadings so as to cover all potential claims against SolarCity. By refusing to cooperate, Proposed Intervenors have in essence declared that only their lawsuit, litigated exclusively by their own lawyers, will suffice. That is unfortunately the antithesis of leadership.

*pro hac vice*
*Attorneys for Plaintiff and the Putative Class*

Julie M. Tolek
julie@thinkpinklaw.com
Think Pink Law
160 Speen Street, Suite 202
Framingham, MA 01701
Tel: 617-752-1739
Fax: (617) 752-1739

**CERTIFICATE OF SERVICE**

I hereby certify that the above papers were filed through the Court's ECF system, which will serve the papers electronically to all counsel of record.

/s/ Patrick H. Peluso