UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
CAROLE GIBBS and ARTHUR COLBY,          )
Individually an on behalf of all others )          CIVIL ACTION
similarly situated,                     )
                         Plaintiffs,    )          NO. 4:16-CV-11010-TSH
                                        )
                                        )
              v.                        )
                                        )
                                        )
SOLARCITY CORPORATION,                  )
                                        )
                         Defendant.     )
_____  )


<u>MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS (Docket No. 31)</u>

**March 8, 2017**

**HILLMAN, D.J.**

Plaintiffs Carole Gibbs and Arthur Colby bring this action against SolarCity Corporation individually and on behalf of all others similarly situated alleging that SolarCity made unsolicited telephone calls to their cellular phones and landlines in violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, *et seq*. Plaintiffs Gibbs and Colby allege that SolarCity engaged in a campaign of unrelenting, unsolicited telemarketing calls to plaintiffs using an automatic telephone dialing system ("ATDS"), and that, to the extent plaintiffs had at some point consented to solicitation, these calls persisted after any such consent had been repeatedly and expressly revoked. SolarCity moves to dismiss the present action on the grounds that both plaintiffs lack standing because they failed to plead a concrete injury, depriving this court of

subject matter jurisdiction, and that plaintiff Colby also fails to state a claim upon which relief can be granted.  For the reasons outlined below the motion to dismiss is ***denied*** as to all counts.

## Background

Defendant SolarCity is the largest installer of solar energy systems in the United States. SolarCity uses an automated telephone dialing system to place telemarketing calls to potential customers.  Automated telephone dialing systems can store, produce, and dial random or sequential numbers *en masse*, without the need for human intervention.

Plaintiff Gibbs claims a SolarCity representative visited her home at some point in 2014 to provide an initial assessment and offer SolarCity products and services.  Gibbs notified the salesman during that visit that she was not interested in doing business with the Defendant.  Since that initial consultation, she has received numerous telemarketing calls from SolarCity.  Gibbs alleges that she expressly asked the SolarCity representatives to stop calling her two years ago, but has continued to receive calls regularly.  Gibbs initially registered her landline phone number on the National Do Not Call registry in July 2005.

Plaintiff Colby registered his cellular phone number on the National Do Not Call registry in October 2008.  He visited SolarCity's website around December 2015 and requested a quote for installation of solar panels at his home.  A SolarCity representative visited his residence at some point after this request, and notified Colby that his house was ill-suited for solar panels.  Despite being told that solar panels were not appropriate for his residence, after that initial consultation, Colby alleges SolarCity repeatedly called his landline and cellular telephones for six months. Colby states that he repeatedly requested SolarCity stop calling him, but after months of fruitless efforts, he stopped answering their calls.  Colby states that he received "at least one call more than thirty [] days after he requested for the calls to stop."  Compl. ¶33.  Colby also alleges that, upon

answering calls from SolarCity, there would be a pause before a live person began speaking, and that this was "indicative of an ATDS or predictive dialer." Compl. ¶34.

Gibbs and Colby filed the present suit on behalf of themselves and all others similarly situated, seeking certification of the classes outlined below, actual and statutory damages, injunctive relief enjoining SolarCity and its agents from making unsolicited telephone calls, as well as costs and attorneys' fees.  Gibbs and Colby propose the following classes:

1)  Autodialed No Consent Class, defined as

All persons in the United States who from May 24, 2012 to the present (1) SolarCity caused to be called using an ATDS, (2) on the person's cellular telephone number, (3) for the purpose of selling SolarCity's products and services, and (4) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call Plaintiff.

2)  Autodialed Do Not Call Class, defined as

All persons in the United States who from May 24, 2012 to the present (1) SolarCity caused to be called using an ATDS, (2) on the person's cellular telephone, (3) for the purpose of selling SolarCity's products and services, (4) after the person informed SolarCity that s/he no longer wished to receive calls from SolarCity.

3)  Do Not Call Registry Class, defined as

All persons in the United States who (1) SolarCity caused to be called more than one time on his/her telephone, (2) within any 12- month period, (3) where the telephone number had been listed on the National Do Not Call Registry for at least

thirty days, (4) for the purpose of selling SolarCity's products and services, and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.

4)  Telemarketing Revocation Class, defined as

All persons in the United States who (1) SolarCity caused to be called, (2) on the person's telephone number, (3) for the purpose of selling SolarCity's products and services, (4) where the person requested that the calls stop yet s/he received at least one additional call more than thirty (30) days after the request, and at least two calls within a 12-month period, and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiff.

Plaintiffs filed the present action alleging that SolarCity violated 47 U.S.C. § 227(b), *et seq.*, with regards to Colby and the Autodialed No Consent Class (Count I), and with regards to Colby and the Autodialed Do Not Call Class (Count II); violated 47 U.S.C. § 227(c), *et seq.*, with regards to Gibbs and the Do Not Call Registry Class (Count III); and violated 47 U.S.C. § 227 *et seq.*, with regards to Gibbs, Colby, and the Telemarketing Revocation Class (Count IV).

## Discussion

A.  *Standing*

SolarCity contends neither Gibbs nor Colby plead concrete injury and thus lack standing, depriving this court of subject matter jurisdiction over this action.  SolarCity asserts that allegations

of actual injury in the complaint are devoid of factual support, and that a technical violation of the TCPA alone does not amount to an injury-in-fact.

To satisfy the standing requirement for subject matter jurisdiction, a plaintiff must prove that he/she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 136 S.Ct. 1540, 1547 (2016). "To establish an injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130 (1992). "A 'concrete' injury must be 'de facto'; this is, it must actually exist." *Id.* at 1549. Intangible harm can amount to 'concrete' injury for the purposes of establishing standing. *Id.*

The complaint states that SolarCity's repeated telemarketing calls caused Gibbs, Colby and members of the proposed Classes to suffer harm by way of "the aggravation and nuisance and invasions of privacy that result from the placement and receipt of such unwanted calls, [] a loss of the value realized for the monies consumers paid to their wireless carriers for the receipt of such calls, [] a loss of the use and enjoyment of their cellphones, including the related data, software and hardware components, and wear and tear on such components including the consumption of battery life." Compl. ¶4.

The majority of courts considering similar facts have found them sufficient to satisfy the requirement of concrete injury, and several have held that a mere technical violation of the TCPA is, by itself, a concrete injury sufficient to confer standing. *See Van Patten v. Vertical Fitness Group*, 847 F.3d 1037, 1043 (9th Cir. 2017) ("A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'") (quoting *Spokeo,*

136 S.Ct. at 1549); *Wilkes v. CareSource Mgmt. Grp. Co.*, 2016 WL 7179298, at *3 (N.D. Ind. Dec. 9, 2016) ("district courts within the Seventh Circuit that have addressed this issue, all have held that a violation of the TCPA gives rise to a concrete injury under Article III."); *LaVigne v. First Cmty. Bancshares, Inc.*, 2016 WL 6305992, at *6 (D.N.M. Oct. 19, 2016) (finding a violation of the TCPA constitutes a "concrete" harm for an Article III injury-in-fact requirement, noting "the TCPA contains a congressionally-identified concrete injury in its language prohibiting certain kinds of telephone calls."); *Krakauer v. Dish Network L.L.C.*, 168 F. Supp. 3d 843, 845 (M.D.N.C. Aug. 5, 2016) (citing *Spokeo*, 136 S.Ct. at 1549) ("[t]hese calls form concrete injuries because unwanted telemarketing calls are a disruptive and annoying invasion of privacy," and even unheard and unanswered calls create "a risk of an invasion of a class member's privacy," sufficient to meet requirement for concrete injury.); *Rogers v. Capital One Bank (USA), N.A.*, 190 F. Supp. 3d 1144, 1147 (N.D. Ga. June 7, 2016) (citing the Eleventh Circuit as holding a violation of the TCPA is a concrete injury, court found plaintiffs alleged concrete injury because calls were made to their personal cell phone numbers and "suffered particularized injuries because their cell phone lines were unavailable for legitimate use during the unwanted calls."); *Mey v. Got Warranty, Inc.*, 193 F. Supp. 3d 641, 645 (N.D.W. Va. June 30, 2016) (invasions of privacy resulting from unwanted telemarketing calls "meet the requirement of concreteness as interpreted by *Spokeo* because Congress so clearly identified it as a legally cognizable harm."); *Booth v. Appstack, Inc.*, 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016) (alleged TCPA violations "required Plaintiffs to waste time answering or otherwise addressing widespread robocalls….such an injury is sufficiently concrete to confer standing.").

This court agrees with the majority of courts finding that Congress, when it enacted the TCPA, recognized receiving unsolicited telemarketing calls is a legally cognizable harm and

comprises a "concrete" injury. The telemarketing calls alleged here "present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA. Unsolicited telemarketing phone calls…by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond what Congress has identified.'" *Van Patten*, 847 F.3d at 1043 (quoting *Spokeo*, 136 S.Ct. at 1549).

SolarCity additionally argues that plaintiffs cannot suffer an invasion of privacy from calls to telephone numbers they willingly supplied. While the TCPA does not expressly provide consumers a right to revoke express consent previously given, courts have consistently recognized that such a right exists, and that consent may be revoked orally. *See Van Patten,* 847 F.3d at 1048 ("the TCPA permits consumers to revoke their prior express consent to be contacted by telephone autodialing systems."); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 270 (3d Cir. 2013) ("Although the TCPA does not expressly grant a right of revocation to consumers who no longer wish to be contacted on their cellular phones by autodialing systems, the absence of an express statutory grant of this right does not mean that the right to revoke does not exist."); *Himes v. Client Services, Inc.*, 990 F. Supp.2d 59, 69 (D.N.H. Jan. 2, 2014); *Hudson v. Sharp Healthcare*, 2014 WL 2892290, at *7 (S.D. Cal. June 25, 2014); *Hart v. Vital Recovery Services, Inc.*, 2013 WL 12116580, at *4 (N.D. Fla. Dec. 18, 2013); *Munro v. King Broadcasting Co.*, 2013 WL 6185233, at *3 (W.D. Wash. Nov. 26, 2013).

The Ninth Circuit cited the three main reasons courts have given in concluding that consumers may revoke prior express consent under the TCPA as (1) "such a holding is consistent with the common law principle that consent is revocable"; (2) "allowing consumers to revoke their prior express consent aligns with the purpose of the TCPA," and (3) "the FCC has stated persuasive

guidance implying that consumers may revoke their consent." *Van Patten*, 847 F.3d at 1047-48

(citing *SoundBite Communications, Inc.*, 27 F.C.C. Rcd. 15391; *In re Rules & Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. 7961 (July 10, 2015)).

Following the logic outlined by the Ninth Circuit in *Van Patten*, this Court concludes that a general

right to orally revoke prior express consent exists under the TCPA.

      Both plaintiffs allege they orally revoked any consent previously given to SolarCity, and it

is reasonably inferred from the complaint that SolarCity placed a significant number of calls to

Gibbs and Colby more than a month after they were expressly told to stop.  Accordingly, plaintiffs

suffered a concrete injury sufficient to establish standing, and SolarCity's motion to dismiss the

complaint for want of subject matter jurisdiction is thus denied.


### B. *Failure to State a Claim*

      To withstand a Rule 12(b)(6) motion to dismiss, a complaint must allege a claim that

plausibly entitles the plaintiff to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct.

1955, 167 L.Ed.2d 929 (2007). Plausibility does not require probability but "it asks for more than

a sheer possibility the defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129

S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). While a

complaint "does not need detailed factual allegations," it "requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*,

550 U.S. at 555, 127 S.Ct. 1955 (citations omitted).

      Assessing plausibility is a two-step process. *Rodriguez–Reyes v. Molina–Rodriguez*, 711

F.3d 49, 53 (1st Cir. 2013). "First, the court must sift through the averments in the complaint,

separating conclusory legal allegations (which may be disregarded) from allegations of fact (which

must be credited). Second, the court must consider whether the winnowed residue of factual allegations gives rise to a plausible claim to relief." *Id.* "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Id.* (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc)).

## Counts I and II

SolarCity moves to dismiss Counts I and II because Colby fails to plead any calls made specifically to his cellular phone – a necessary element for the survival of those claims, and that he consented to any calls he did receive when he provided his phone number to SolarCity via their website. SolarCity cites no authority for its assertion that Colby must plead "specific" calls, "dates or other details to orient those cellphone calls in time relative to the site visit or his claimed 'stop call' request…." Mot. at 16. While Colby disputes the adequacy of the consent language on SolarCity's website, the court need not address the issue for the reasons outlined above in the discussion of standing.

SolarCity's narrow reading of Colby's complaint suggests that he has not pled specific calls to his cellphone after he revoked his consent. This court disagrees. Colby relates that he received numerous calls to both his "cellular and landline telephones" over several months after he withdrew his consent. Compl. ¶31. That is sufficient to establish a plausible basis for his claims.

## Count IV as to Plaintiff Colby

Finally, SolarCity argues that Colby fails to plead facts sufficient to support Count IV because he alleges he received "at least one" call 30-days after requesting SolarCity stop calling him, but the TCPA requires at least two such calls to state a claim. Compl. ¶33. The TCPA creates

a cause of action for "[a] person who has received ***more than one*** telephone call within any 12-month period by…the same entity in violation of the regulations." 47 U.S.C. § 227(c)(5).  The regulation relevant to Count IV, 47 C.F.R. § 64.1200, mandates an entity making telemarketing calls "honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made …. not [to] exceed thirty days from the date of such request."

While Colby pleads he received "at least one call" more than thirty days after he requested SolarCity stop, the complaint further alleges that Colby had repeatedly asked SolarCity to stop calling him for "several months" after his initial home visit, but that his appeals were "fruitless." Compl. ¶32.  The complaint alleges numerous unsolicited calls after his first revocation of consent. Certainly "more than one," which is all that is required.  Accordingly, the motion to dismiss Count IV with regards to Colby is also denied.

## Conclusion

For the reasons set forth above, Defendant's motion to dismiss (Docket No. 31) is ***denied.***

**SO ORDERED.**

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**